**KASSAB ARCHBOLD & O'BRIEN,
Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 3, 1997.

Decided Nov. 10, 1997.

Reconsideration Denied Jan. 14, 1998.

Roy T.J. Stegena, Media, for petitioner.

Liza Jo Fanelli, Asst. Counsel, Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before PELLEGRINI and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

PELLEGRINI, Judge.

Kassab Archbold & O'Brien (Employer) appeals an order of the Unemployment Compensation Board of Review (Board) awarding unemployment compensation benefits to Kathleen Siko (Claimant) under Section 402(e) of the Unemployment Compensation Law (Law) [1] because she was not discharged due to willful misconduct.

Claimant was employed full-time as a paralegal by the law firm of Kassab Archbold & O'Brien. In July of 1996, she received a packet of information from her Employer stating that the firm had changed its insurance carrier. Included in that packet was a pamphlet explaining the Employer's disability policy and specifying that employees were entitled to 13 weeks of short-term disability leave. Claimant had previously asked Employer about its maternity leave policy but was not provided with any information. On July 24, 1996, Claimant gave her supervisor a memorandum stating that she would be returning to work full-time ten weeks after her maternity leave began. She did not receive any response from her supervisor or from anyone else in the firm indicating that this was not acceptable.

Due to complications with her pregnancy, Claimant began her maternity leave on August 15, 1996. She delivered her baby on September 10, 1996. Because Employer believed Claimant had only six weeks of maternity leave from the date of delivery, her last day of maternity leave was October 21, 1996. On October 22, 1996, the firm Administrator attempted to contact her to see if she was returning to work on October 22, 1996. Claimant had changed her telephone number and the Administrator was unable to reach her. Because Claimant did not show up for work on October 22, 1996, the managing partner sent Claimant the following letter:

Dear Kathy,

Your short-term disability period you requested expired on October 21, 1996. You did not report to the office on your scheduled return date, which was October 22, 1996. Since we have not heard from you since you left the office on August 15, 1996, and you have not reported to work on your scheduled return date, we must interpret these actions as a resignation. If you do not report to work by Friday, October 25, 1996 at 9:00 a.m., we will remove you from our payroll and accept your resignation. If you have questions or concerns, please contact Liz Magnotta before this time.

Claimant received the letter the next day and was upset by its tone because she believed that her last day of her ten week maternity leave was Friday, October 25, 1996, and she had to return to work on Monday, October 28, 1996. Instead of directly contacting the firm's Administrator to discuss her return to work date, Claimant contacted her husband who called the Administrator to ask why his wife was being required to return to work before her ten week leave period ended. After being told by the Administrator that the firm's policy was to allow six weeks for maternity leave, Claimant's husband asked the Administrator to have the managing partner who had written the letter to contact him. Claimant's husband never told the Administrator that Claimant intended to return to work on October 28, 1996. Because the managing partner never returned the call from her husband, Claimant sent him a letter stating that she had not been given a specific date by her Employer on which she had to return to work. She also stated that she had not resigned or intended to resign from her employment and considered herself terminated upon receipt of the firm's letter.

Claimant filed for unemployment compensation benefits with the Chester Job Center contending she had been discharged from her employment and had not quit of her own accord. She was granted those benefits under Section 402(e) of the Law because it was determined that she had been discharged from her employment but her behavior did

**1.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). That section provides:

An employe shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work irrespective of whether or not such work is "employment" as defined in this act.

not amount to willful misconduct. Employer appealed. After a hearing, the Referee granted Claimant benefits finding that she had given her Employer a memo stating that she would be returning to work full time ten weeks after her maternity leave began, and her Employer had not told her to return earlier or on a specific date. The Referee noted, however, that Claimant's date of return after her ten week leave would have been Thursday, October 24, 1996, rather than Friday, October 25, 1996. The Referee then concluded that Claimant had not violated any of her Employer's policies and her conduct did not rise to the level of willful misconduct.

The Employer filed an appeal with the Board which adopted the Referee's findings but also specifically found that Claimant did not voluntarily quit her position and had effectively been discharged by the Employer's letter of October 22, 1996. The Board then affirmed the Referee's decision because the Employer had not proven that Claimant was discharged for willful misconduct. This appeal by the Employer followed.[2]

The Employer contends that the Board erred in finding Claimant was discharged because its letter to her did not discharge her, but only stated that if she did not return to work by October 25, 1996, she would be considered to have voluntarily resigned. It argues that by her October 24, 1996 letter, Claimant voluntarily terminated her employment with the firm because that letter stated that she was considering herself terminated prior to the last day that she could return to work and retain her position. Additionally, it contends she took no steps to preserve her employment relationship with the firm.

■■■ A claimant has the burden of proving that her separation from employment was a discharge. *Norman Ashton Klinger & Associates v. Unemployment Compensation Board of Review,* 127 Pa.Cmwlth. 293, 561 A.2d 841 (1989). Whether a claimant's separation from employment is a voluntary resignation or a discharge is determined by examining the facts surrounding the claimant's

termination of employment. *Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review,* 167 Pa. Cmwlth. 386, 648 A.2d 124 (1994), *petition for allowance of appeal denied,* 540 Pa. 615, 656 A.2d 120 (1995). An employee who is on maternity leave and has been told to report to work or face discharge has a duty to act prudently and take reasonable steps to preserve her employment or she may be considered to have voluntarily terminated her employment. *Chamoun v. Unemployment Compensation Board of Review,* 116 Pa. Cmwlth. 499, 542 A.2d 207 (1988).

■■ Even though Claimant testified at the hearing that she was given ten weeks of leave and that entitled her to return to work on October 25, 1996, the Referee determined that her ten week leave of absence actually required her to return to work on October 24, 1996. Claimant never contacted her Employer anytime after she went on maternity leave to tell it she would be returning to work on October 28, 1996, rather than on October 24th or 25th and she failed to return to work on either of those dates. Additionally, upon receiving the firm's letter extending her leave an extra day before being terminated, she had her husband respond to the firm's letter rather than personally calling the firm Administrator as the letter instructed to explain the situation. While her husband did call, he never told the Administrator when Claimant intended to come back to work. Claimant's response was to send a letter on October 24th, one day before her scheduled return date, stating that she considered herself terminated as of October 25, 1996. Claimant could have easily called her Employer and attempted to clear up the confusion but chose not to do so. As such, she made no attempt to preserve her position with the firm and voluntarily terminated her employment.

Because Section 402(b) of the Law provides that a claimant is ineligible for benefits when her unemployment is due to a voluntary termination without a necessitous and

---

2. Our scope of review of a decision of the Board is limited to determining whether constitutional rights have been violated, errors of law committed, or whether findings of fact are supported by

substantial evidence. *Phoebus v. Unemployment Compensation Board of Review,* 132 Pa.Cmwlth. 518, 573 A.2d 649 (1990).

compelling reason, *Flatley v. Unemployment Compensation Board of Review*, 93 Pa. Cmwlth. 78, 500 A.2d 515 (1985), the decision of the Board is reversed.

Accordingly, the decision of the Board is reversed.

### ORDER

AND NOW, this 10th day of November, 1997, the order of the Unemployment Compensation Board of Review dated March 7, 1997, is reversed.

MIRARCHI, Jr., Senior Judge, dissents.