**James V. BITONTI, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 11, 1999.

Decided Sept. 20, 1999.

Richard E. Gordon, Pittsburgh, for petitioner.

No appearance entered for respondent.

Before DOYLE, J., PELLEGRINI, J., and McCLOSKEY, Senior Judge.

PELLEGRINI, Judge.

James V. Bitonti (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) affirming and modifying the decision of the Referee and granting him unemployment compensation benefits at the rate of $61 per week.

Claimant was employed by Wheeling Pittsburgh Steel (Employer) from March 15, 1964 until January 31, 1998, when he opted out for early retirement, apparently in lieu of being laid off from his employment. Upon his retirement, Claimant received a monthly retirement pension from Employer in the amount of $1,047.99 and a monthly pension from the Pension Benefit Guarantee Corporation (PBGC)[1] in the amount of $328.69. Claimant filed for unemployment compensation benefits on July 5, 1998, and the Charleroi Job Center (Job Center) determined that he was entitled to $61.00 per week. It concluded that Claimant's weekly benefit rate was $375, and based upon his monthly retirement pensions, which it erroneously totaled at $1,356.68 rather than $1,376.68, it prorated his weekly benefit rate to $314 ($375 − $314 = $61).

---

1. The PBGC was created by ERISA in 1974 "to administer and enforce a pension plan termination insurance program, to which contributors to both single-member and multi employer plans were required to pay insurance premiums." *Concrete Pipe, of Cal. v. Laborers Pension Tr.,* 508 U.S. 602, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993). "It is a private governmental corporation modeled after the Federal Deposit Insurance Corporation and is charged statutorily with protecting and preserving private pension plans." *In Re CF & I Fabricators of Utah,* 150 F.3d 1293 (10th Cir.1998). *See also* 29 U.S.C. §§ 1301 et seq. When a pension plan goes bankrupt, the PBGC is charged to pick up the pieces and pay employees from the pension fund.

Claimant appealed the Job Center's decision contending that it improperly included the PBGC pension against his unemployment compensation benefits even though it resulted from his work for Employer up through 1985 at which time it declared bankruptcy and the PBGC took over the action. While the PBGC pension resulted from his work for Employer, Claimant contended that he neither contributed to the plan nor was the pension received affected by his employment during the base period[2] used to calculate his unemployment compensation benefits.

Richard Bowness (Bowness), Employer's Controller of Payroll Benefits Accounting, testified that the money Claimant was receiving from PBGC was the result of a settlement agreement between Employer and PBGC. "[I]t (the settlement agreement) says beginning at the earliest days, benefits are payable by the PBGC. PBGC benefits equals the monthly amount payable to single annuity offset—will be offset under—will be offset from his monthly benefit." (Notes of Testimony at p. 10.) Bowness also stated that prior to its bankruptcy, Employer contributed to a pension fund, but because it was under-funded, Employer had to turn over all of the assets of its pension plans to PBGC which took over the fund and was now paying the pensions Employer owed. He also stated that the PBGC was funded by other employers who paid premiums to the PBGC.

The Referee determined that the amount of pension Claimant received from the PBGC was not deductible from his weekly benefit rate of $375, and only the $1,047.99 retirement pension from Employer was deductible, resulting in a pro-rated weekly benefit rate of $241.84 (rounded up to $242) per week. Conse-

quently, the Referee concluded that Claimant was entitled to an adjusted weekly benefit rate of $133 ($375 – $242 = $133). Claimant appealed the Referee's decision to the Board which affirmed the Referee's decision but modified it to again reflect a weekly benefit rate of $61.00 payable to Claimant. The Board concluded that Employer contributed 100% to both pensions and that they were based on services performed for Employer and were to be included, amounting to $1,356.68 ($1,047.99 + $328.69 = $1,356.68) and resulting in an average weekly wage of $314 and an unemployment benefit of $61.00 per week ($375 – $314 = $61).

Claimant filed an appeal from the Board's decision and now argues that the Board erred in modifying the Referee's decision because the Referee properly excluded the pension paid by the PBGC.[3] Sections 404(d)(2)(i), (ii) and (iii) of the Law, 43 P.S. § 804(d)(2)(i), (ii) and (iii), address how pensions are to be treated in the unemployment compensation benefits arena. Those sections provide the following:

(i) [F]or any week with respect to which an individual is receiving a pension, including a governmental or other pension, retirement or retired pay, annuity or other similar periodic payment, under a plan maintained or contributed to by a base period or chargeable employer, the weekly benefit amount payable to an individual for such week shall be reduced, but not below zero, by a pro-rated weekly amount of the pension.

(ii) If the pension is *entirely contributed to by the employer,* then *one hundred* per centum (100%) of the pro-rated weekly amount of the pension shall be deducted. *If the pension is contributed*

---

**2.** "Base year" is defined as the first four of the last five completed calendar quarters immediately preceding an employee's benefit year. Section 4(a) of the Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937), 2897, *as amended,* 43 P.S. § 753(a).

**3.** Our scope of review of a decision of the Board is limited to determining whether constitutional rights have been violated, errors of law committed, or whether findings of fact are supported by substantial evidence. *Kassab Archbold & O'Brien v. Unemployment Compensation Board of Review,* 703 A.2d 719 (Pa.Cmwlth.1997).

*to by the individual,* in any amount, then *fifty* per centum, (50%) of the prorated weekly amount of the pension shall be deducted. (Emphasis added.)

(iii) No deduction shall be made under this clause by reason of the receipt of a pension if the services performed by the individual during the base period or remuneration received for such services for such employer did not affect the individual's eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity or similar payment.

43 P.S. § 804(d)(2)(i), (ii) and (iii). Under this statute, subsection (iii) only applies as an exception to subsection (ii) when the services performed by the employee are performed during the base year.

Claimant argues that the Board incorrectly relied on Section 804(d)(2)(ii) in finding that Employer contributed 100% to the PBGC pension and that pension was based on services he performed for Employer, because no evidence was presented that Employer paid 100% of the pension he was currently receiving from the PBGC, and the monthly PBGC pension benefit was in no way related to his work performed or wages earned by him during his base year because that pension was based on his service prior to the 1985 bankruptcy-related pension plan termination. We agree with Claimant that the Board improperly deducted this amount from the calculation of his unemployment compensation benefits.

For any deduction to be taken under Section 404(d)(2)(ii) of the Law, Employer would have had to establish either that it had contributed 100% towards Claimant's

pension or that Claimant had contributed towards his pension a 50% reduction. As to the former, Employer's witness testified that it did not know how much of Claimant's pension from the PBGC was paid into by Employer. As to the latter, the Board specifically noted that Claimant did not contribute to the pension plans. Because there was no evidence that Employer contributed 100% and it is uncontroverted that Claimant contributed nothing to the plan, there were no grounds for a reduction in the calculation of Claimant's benefits under Section 804(d)(2)(ii) of the Law.[4]

Because Employer did not establish that either it or Claimant contributed to his pension and the pension was not affected by wages earned in the base period used to calculate his unemployment compensation benefits, the decision of the Board is reversed.

### O R D E R

AND NOW, this 20th day of September, 1999, the order of the Unemployment Compensation Board of Review, dated November 16, 1998, is reversed.

McCLOSKEY, Senior Judge, dissenting.

I respectfully dissent. The record indicates that James V. Bitonti (Claimant) did not contribute to the pension he received from the Pension Benefit Guarantee Corporation (PBGC). Absent contributions to a pension by an employee, the pension payments must be offset against a claimant's unemployment compensation benefits. *See* Section 404(d)(2)(ii) of the Unemployment Compensation Law (Law).[1]

I believe that the majority erred when it concluded that there were no grounds for a reduction in the calculation of Claimant's benefits under Section 804(d)(2)(ii) of the

---

4. We do not address whether once the PBGC took over the pension fund if any funds could be attributed to Employer, nor do we address whether no deduction should be taken under Section 804(d)(2)(iii).

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937), 2897, *as amended*, 43 P.S. § 804(d)(2)(ii).

Law. The PBGC was created to safeguard employee pensions and therefore stands in the place of the employer, *not* the employee; hence, I assert that the prorated weekly amount of the PBGC pension should have been deducted from Claimant's weekly benefit amount.