127 Pa. Commonwealth Ct. 293 (1989)
561 A.2d 841
NORMAN ASHTON KLINGER & ASSOCIATES, P.C., Petitioner,
v.
COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.
Commonwealth Court of Pennsylvania.
Argued June 8, 1989.
Decided June 30, 1989.
*294 Norman Ashton Klinger, Norman Ashton Klinger & Associates, P.C., Norristown, pro se.
No appearance for respondent.
Steven M. Plon, Philadelphia, for intervenor/claimant, Glenn C. Romano.
Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.
NARICK, Senior Judge.
Norman Ashton Klinger & Associates, P.C. (Employer) has appealed from an order of the Unemployment Compensation Board of Review which affirmed a referee's decision to grant unemployment compensation benefits to Glenn C. Romano (Claimant).
The referee found the following facts, which were adopted by the Board. Claimant, an attorney, was employed by Employer from November 30, 1987 to February 16, 1988. Sometime in the middle of January 1988, Employer informed Claimant that he[1] was dissatisfied with his work and that Claimant should start to look for a new job. Shortly thereafter, on January 29, 1988, Employer requested that Claimant limit the time he would remain in Employer's employ while he looked for a job and the parties agreed that Claimant would have a maximum of three more weeks of continued employment. On February 16, 1988, Claimant approached Employer requesting severance pay and was advised that he was not entitled to such pay. Claimant stated "then I might as well leave now" and Employer asked for his keys.
Based upon these findings, the referee concluded that Claimant's separation from employment was involuntary, as *295 no continuing work was available to him. The referee further found that, although Employer was dissatisfied with Claimant's work, Claimant did his assigned duties to the best of his ability. Accordingly, the referee concluded that Claimant's actions did not rise to the level of willful misconduct.
Employer raises two alternative arguments for our review: 1) whether Claimant's conduct constituted willful misconduct justifying both his dismissal and a denial of benefits, and 2) whether Claimant's separation from employment was voluntary. Logic dictates that the latter issue be addressed first.
The threshold issue, where a voluntary quit is alleged, is a determination of whether the facts surrounding a claimant's separation from employment indicate a voluntary resignation or a discharge. Maines v. Unemployment Compensation Board of Review, 110 Pa.Commonwealth Ct. 601, 532 A.2d 1248 (1987). This is a question of law, subject to our review. Id. It is a claimant's burden to prove that he was discharged. Torsky v. Unemployment Compensation Board of Review, 81 Pa.Commonwealth Ct. 642, 474 A.2d 1207 (1984). Here, the referee found that Employer told Claimant in mid-January that he was dissatisfied with his work and that Claimant should seek employment elsewhere. At that time, no termination date was set. Then, on January 29, 1988, Employer gave Claimant three weeks within which to find other employment. The initial question is whether Employer's language, at that point, possessed the immediacy and finality of a firing. Maines.
Employer argues that the three-week term was a "negotiated" date. A review of the testimony reveals that Claimant was given the option of working one, two or three weeks longer, and chose the longest term available. While Employer now contends that he would not have terminated Claimant had he not found other work within the three weeks, the referee found as a fact that Claimant's employment was to end no later than three weeks after January 29. Claimant's testimony amply supports that finding. As *296 a matter of law, Employer's actions constituted a discharge, as a three-week period of continued employment possesses the requisite immediacy and finality.
The problem here arises because Claimant requested severance pay on February 16, 1988 (three days before the end of the three-week period). When Employer denied the request, Claimant stated, "I might as well leave now" and Employer asked for Claimant's keys. Employer contends that Claimant's actions necessarily constitute a voluntary termination of his employment. Were it not for the fact that Employer had previously established Claimant's termination date, we might agree. However, this is not a case where the employee, without action by the employer, has resigned, left or quit. Torsky. Indeed, we have held that an employee cannot "quit" after an employer has terminated the employment relationship. Id. In addition, we are bound by the referee's factual finding that continuing work was not available to Claimant, a finding which is supported by Claimant's and Employer's testimony, as well as Employer's action in demanding return of Claimant's keys.
Having determined that Claimant's separation from employment was involuntary, we now turn to the question of whether he was discharged for willful misconduct. Employer's brief lists Claimant's many errors and vehemently contends that they compel a finding of willful misconduct. Employer, of course, bears the burden of proving willful misconduct, Heins v. Unemployment Compensation Board of Review, 111 Pa.Commonwealth Ct. 604, 534 A.2d 592 (1987), and whether certain conduct constitutes willful misconduct is a question of law. Id. In addition, "[m]ere dissatisfaction with an employee's performance will not disqualify the employee from receiving benefits upon his discharge; the employer must shoulder his burden of proof by demonstrating that a specific transgression or amalgam of transgressions amounting to willful misconduct actually precipitated the employee's dismissal." Tundel v. Unemployment *297 Compensation Board of Review, 44 Pa.Commonwealth Ct. 312, 314, 404 A.2d 434, 435 (1979).[2]
The testimony at the referee's hearing was largely contradictory. Employer, on the one hand, presented a picture of a careless, unprofessional employee, who violated professional ethics, undermined his Employer's authority with the secretarial staff and contravened Employer's orders. Claimant, on the other hand, testified that this was his first job after law school and that he was frequently left without guidance, as Employer was often out of the office or unavailable to answer his questions. After one month on the job, Claimant was left in charge of the office and of two secretaries who had started at about the same time he had, while Employer took a ten-day vacation abroad. Claimant testified that he worked hard and tried to satisfy his Employer. The referee found that Claimant worked to the best of his ability and did not refuse to do his assigned work, necessarily resolving these conflicts in Claimant's favor. Because these findings are amply supported by the record, they are binding on appeal. Taylor v. Unemployment Compensation Board of Review, 474 Pa. 351, 378 A.2d 829 (1977).
We have held that a finding that a claimant has worked to the best of his ability negates a conclusion of willful misconduct. Radio Station WVCH v. Unemployment Compensation Board of Review, 60 Pa. Commonwealth Ct. 23, 430 A.2d 737 (1981). "`[M]ere incompetence, incapacity, or inexperience causing poor work performance, will not support a discharge for willful misconduct.'" Macro Enterprises v. Unemployment Compensation Board of Review, 68 Pa. Commonwealth Ct. 432, 434, 449 A.2d 788, 789 (1982) (citing Monogram Products Co., Inc. v. Unemployment *298 Compensation Board of Review, 58 Pa. Commonwealth Ct. 291, 295, 427 A.2d 756, 758 (1981)). Accordingly, Claimant's unsatisfactory performance did not constitute willful misconduct as a matter of law.
Having found that Claimant was involuntarily terminated from his position and that his conduct did not constitute disqualifying willful misconduct, we affirm the Board's order awarding unemployment compensation benefits.

ORDER
AND NOW, this 30th day of June, 1989, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.
NOTES
[1] Because the contacts between Employer and Claimant all involved Mr. Klinger himself, references to "Employer" herein shall apply interchangeably to Mr. Klinger and his law firm.
[2] In Tundel, we held that a claimant's discharge, which, without explanation, came 25 days after the incident alleged to have given rise to the termination, was too remote to support a finding of willful misconduct, noting that "[a]n incident of willful misconduct cannot be temporally remote from the ultimate dismissal and still be the basis for a denial of benefits." Id., 44 Pa.Commonwealth Ct. at 316, 404 A.2d at 436. Here, we note a similar temporal gap, coupled with Employer's inability to point to a specific date of discharge.