MESSER AND STILP, LTD., Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—08—1761

Opinion filed June 12, 2009.

John N. Bielski II and J. Michael True, both of Messer & Stilp, Ltd., of Chicago, for appellant.

Kristin D. Tauras, of McKenna Storer, and Lisa Madigan, Attorney General, both of Chicago (Michael A. Scodro, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellees.

JUSTICE TOOMIN delivered the opinion of the court:

The question before us is whether an attorney's termination for unsatisfactory performance meets the standard of willful misconduct required to deny unemployment insurance benefits. No reported Illinois case has answered the question. Plaintiff, Messer & Stilp, Ltd., appeals from the circuit court's judgment affirming the administrative decision of the Board of Review of the Illinois Department of Employment Security granting an attorney's claim for benefits under the Illinois Unemployment Insurance Act (820 ILCS 405/100 *et seq.* (West 2006)). Messer & Stilp contends that (1) the Board erred in rejecting the argument that in determining an attorney's entitlement to benefits, the prevailing misconduct standard should be abandoned in favor of a higher standard of negligence or incompetence; and (2) the Board improperly determined that claimant's conduct did not constitute willful or deliberate misconduct. For the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

Claimant is an attorney licensed to practice law in the State of Illinois since 1993. She was employed as an associate attorney at Messer & Stilp, Ltd., from May 30, 2006, until her termination on September 8, 2006. Claimant's discharge was based on her alleged failure to follow the firm's rules concerning the handling of cases and for repeated problems in handling lease negotiations.

Following her discharge, claimant applied for unemployment insurance benefits before the local office of the Illinois Department of Employment Security (IDES). The IDES claim form reflected the

reason for separation was "lack of work." Messer & Stilp filed a timely protest asserting that claimant had been terminated for cause; that her repeated failure to follow directions placed the well being of the firm's clients in jeopardy and constituted misconduct. However, on December 16, 2006, the IDES adjudicator found that claimant was discharged because she was unable to meet the employer's standards or job requirements. The adjudicator further determined that she was eligible for benefits because "the claimant's action which resulted in her discharge was not deliberate and willful." Eligibility covered each week during the period from September 24 through October 7, 2006, and thereafter, provided she continued to meet the eligibility requirements of the Illinois Unemployment Insurance Act (the Act).

Messer & Stilp sought further review before the IDES appeals division. On February 5, 2007, the matter proceeded to telephonic hearing before a hearing officer who received testimony and relevant exhibits.

The evidence adduced before the referee reflected that on May 11, 2006, Messer & Stilp extended an offer of employment to claimant. At that time, claimant was a senior associate at a downtown firm, where she had practiced since 2003 in the areas of commercial litigation, real estate, and insurance coverage. As reflected in the offer, Messer & Stilp served primarily, but not exclusively, as a captive law firm for clients involved in diverse practice areas of real estate management, building services, debt collection, and manufacturing.

Claimant began working at Messer & Stilp on May 30, 2006, subject to a 90-day probationary period. During this period she was to be reviewed informally to discuss her strengths and any areas needing improvement. Upon commencing employment, claimant was given a copy of the firm's practice and policy memorandum directing all attorneys and staff to: (1) contact the client at least once every 30 days; (2) send the client copies of all "final" work product; (3) send all court documents and significant correspondence to a partner for review prior to filing or sending; and (4) follow or establish deadlines for all tasks and report back as to compliance.

On August 29, 2006, claimant received her 90-day review from the firm. The e-mail transmitted by Thomas Stilp, a partner, stated in part:

> "As we have approached the probationary review point, your performance is mixed. Although you appear willing to take on work, the work efficiency (or turn around) is not quick. A review of your hours reflects that although your time is near the target minimum of 150 hours, an occasional push in that direction would probably increase turn around time on some projects.

The quality of work is not what we would have expected with someone at your level of experience. Sometimes, there does not appear to be much 'advocacy' in your negotiation of leases favoring the landlord. Where a term is not able to be modified for the landlord, you should provide a context so we understand the relative importance of the term for the potential tenant. For example, if the tenant has 10 items to negotiate, and one is very important, we should know that information before having to respond to the tenant. Instead, we get terms piecemeal and over several days. Sometimes you can control these issues, sometimes you cannot, but we don't have a sense you have directed the tenant on negotiations. You should require a tenant to state all requested modifications, and rank in order of importance, before taking any final terms to the 'ownership' for approval, rejection or modification."

Additionally, Stilp testified concerning a series of what he termed as recurring incidents evincing claimant's repeated failure to follow the firm's rules. For example, on August 24, 2006, he complained that in a lease negotiation claimant had failed to review the broker proposals while preparing the lease and had not properly negotiated certain terms. On August 31, claimant was informed that she was neglecting the projects assigned to her and on September 2, Stilp noted discrepancies in a gross lease that he was raising for the third time. The next day he criticized claimant's failure to follow up in pending litigation by moving for a discovery cut-off date and preparing a motion for summary judgment as they had discussed. Although Stilp volunteered that they had made a real effort to insure that claimant followed the firm's procedures, in his opinion her deliberate disregard for the rules constituted willful misconduct.

Claimant testified that she was working to the best of her ability. She admitted that she had made some typographical and administrative mistakes on documents that were later brought to her attention. On September 5, 2006, claimant was informed that her employment at Messer & Stilp was being terminated. In a meeting with the partners she was told that it just was not working out. Messer told her that he had other associates that were making a lot less money than she was and he liked their product better. On September 8, 2006, in an exit interview, Stilp told claimant that there was not going to be any more lease work because he thought they were going to be selling the building, but that she should keep in touch with him because the work load might change.

On February 9, 2007, the referee set aside the determination of the local office and found claimant disqualified for unemployment benefits. Although the referee acknowledged that persons discharged

for incapacity, inadvertence, negligence or inability to perform assigned tasks should still receive unemployment benefits, he concluded that the preponderance of the evidence in claimant's case established that her conduct constituted the type of misconduct contemplated under section 602(A) of the Act. The referee reasoned:

> "In this case, the claimant's position involved an area of expertise in which the claimant represented that she had. The parties involved are professionals and should be held to a higher standard that is the nature of the profession and expected in the industry. The claimant was hired to perform her duties in an expert and professional manner. Here, the employer presented evidence in part, that the claimant failed to file court proceedings in a timely manner as well as evidence that the claimant failed to properly draft terms of a lease agreement. This created ambiguities in the lease."

Additionally, the referee determined that the claimant's noted deficiencies resulted in harm to the law firm:

> "The employer demonstrated the harm it incurred when fees were requested by a tenant from delays caused by the claimant in the negotiations of certain space. The claimant did not perform her job up to the standards of her profession or as the employer expected as part of her working agreement when hired. The record did demonstrate that the employer suffered harm in having to correct the claimant's work and of potential liability it may have incurred as a result of the claimant's actions."

In turn, claimant appealed the referee's decision to the Board of Review (the Board). In its decision, entered June 29, 2007, the Board essentially adopted the findings of the referee, agreeing that the evidence established that claimant was less than a satisfactory employee whose professional standards did not meet the more rigorous standards of her employer. Under those circumstances, the employer was entitled to dispense with claimant's services and exercised that right accordingly.

The Board nonetheless recognized that the business decision to terminate employment based on unsatisfactory performance did not equate to the standard of misconduct required to deny unemployment benefits:

> "[T]he threshold issue in every discharge for misconduct case, and the burden of proof that is born by the employer, is to prove by a preponderance of competent evidence that the claimant's conduct, which gave rise to her discharge, was both 'deliberate and willful', i.e., 'intentional'. And this the employer has failed to do. The claimant's work was careless, it was negligent, it was substandard— all true. But the employer has failed to prove by a preponderance

of the competent evidence that the claimant was deliberately and willfully failing to perform her job in a satisfactory manner, or more specifically, that the claimant was intentionally doing a bad job."

Accordingly, the Board rejected the referee's analysis and conclusion that simply because claimant is an attorney a different set of standards applies in proving misconduct:

"It is apparent from the Referee's conclusion, that he abandoned the deliberate and willful standard set forth in Section 602A [sic] of the Illinois Unemployment Insurance Act (the 'Act'), and the established case law, in favor of a higher standard which applies specifically to attorneys. There is no such attorney exemption in the Act, that the Board is aware of. There are and always will be, attorneys who make mistakes while drafting legal documents. Attorneys who fail to turn in satisfactory work product. Attorneys who forget deadlines. Attorneys who are careless, or negligent, or inexperienced, or lazy, or who cut corners are a fact of life. No one can seriously argue that simply because an individual is an attorney, a different standard of conduct applies to them under the Act."

The Board concluded that the preponderance of competent evidence taken at the referee's hearing did not establish that claimant's conduct, giving rise to her discharge, rose to the level of misconduct contemplated under section 602(A) of the Act.

Thereafter, contending that the Board's decision was erroneous as a matter of law, Messer & Stilp sought review of the decision in the circuit court pursuant to the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2006)). However, the court affirmed the decision of the Board on June 2, 2008, finding that it was neither against the manifest weight of the evidence nor contrary to law nor clearly erroneous.

This appeal followed.

## ANALYSIS

On appeal from a decision granting unemployment compensation benefits, it is the duty of this court to review the decision of the Board, rather than the circuit court. *Richardson Brothers v. Board of Review of the Department of Employment Security*, 198 Ill. App. 3d 422, 428-29, 555 N.E.2d 1126, 1130 (1990). Under the Administrative Review Law, the scope of judicial review extends to all questions of law and fact presented by the record before the court. 735 ILCS 5/3—110 (West 2006). The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of

law and fact. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05, 692 N.E.2d 295, 302 (1998).

We are mindful that an administrative agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct. 735 ILCS 5/3—110 (West 2006). In examining the agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. *City of Belvidere*, 181 Ill. 2d at 204, 692 N.E.2d at 302. Instead, our review is limited to ascertain whether such findings of fact are against the manifest weight of the evidence. Factual findings are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *City of Belvidere*, 181 Ill. 2d at 204, 692 N.E.2d at 302.

In the case *sub judice*, however, the facts are not in dispute. Messer & Stilp acknowledges that it did not challenge the facts before the trial court and is in complete agreement with the factual findings of the Board. Thus, the initial question before us is not whether the Board's findings of fact were against the manifest weight of the evidence. Rather, the first issue, whether the Board's rejection of a higher standard for disqualifying misconduct for attorneys seeking unemployment benefits, requires interpretation of section 602(A) of the Act (820 ILCS 405/602(A) (West 2006)). This is a question of law, which we review *de novo*. *International Union of Operating Engineers Local 148 v. Deparment of Employment Security*, 215 Ill. 2d 37, 62, 828 N.E.2d 1104, 1119 (2005).

The second issue calls for a determination of whether the Board properly concluded that claimant's work performance did not constitute misconduct under the prevailing standards. The question of whether claimant's conduct warrants a finding of misconduct presents a mixed question of law and fact. A mixed question is one involving an examination of the legal effect of a given set of facts. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. Stated another way, a mixed question of law and fact is one " 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' " *American Federation of State, County & Municipal Employees Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577, 839 N.E.2d 479, 485 (2005), quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982).

Agency decisions that present a mixed question of law and fact are reviewed under the "clearly erroneous" standard. *City of Belvidere*, 181 Ill. 2d at 205, 692 N.E.2d at 302. Under that standard, courts of

review give somewhat less deference to the agency than we would if the decision related solely to a question of fact, because the decision is based on fact finding that is inseparable from the application of law to fact. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369, 776 N.E.2d 166, 177 (2002). An agency's decision will be deemed clearly erroneous only where the reviewing court is left with the " 'definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393, 763 N.E.2d 272, 280-81 (2001), quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

The Illinois Unemployment Insurance Act (820 ILCS 405/100 *et seq.* (West 2006)) was enacted to benefit persons who become unemployed through no fault of their own. *Jenkins v. Department of Employment Security*, 346 Ill. App. 3d 408, 411, 805 N.E.2d 363, 366 (2004). While unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant, the Act must be liberally interpreted to favor the awarding of benefits. *Adams v. Ward*, 206 Ill. App. 3d 719, 723, 565 N.E.2d 53, 56 (1990). However, we nonetheless recognize that the legislation was not meant to provide benefits to employees discharged for their own misdeeds. *Moss v. Department of Employment Security*, 357 Ill. App. 3d 980, 985, 830 N.E.2d 663, 668 (2005).

■ Individuals who are discharged for misconduct are ineligible to receive unemployment benefits under the Act. *Livingston v. Department of Employment Security*, 375 Ill. App. 3d 710, 716, 873 N.E.2d 444, 457 (2007). In *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557, 850 N.E.2d 244, 248 (2006), we observed that three elements must be proven to establish disqualifying misconduct under the Act: (1) that there was a "deliberate and willful" violation of a rule or policy; (2) that the rule or policy of the employing unit was reasonable; and (3) that the violation either has harmed the employer or was repeated by the employee despite previous warnings.

In the case at bar, Messer & Stilp faults the Board's conclusion that in determining misconduct claimant should be held to the same standard as any other claimant under the Act. On the contrary, plaintiff asserts that claimant should be held to a higher standard in performance of her professional duties and responsibilities because attorneys are bound by numerous rules and ethical requirements that do not govern the employment practices of nonprofessional workers. Because the bar is raised for attorneys, Messer & Stilp submits that claimant should be held to a higher standard in determining whether misconduct has indeed occurred.

Although Messer & Stilp's argument is no doubt novel, it is nonetheless bereft of any authoritative support, statutory or decisional. Instead, plaintiff contends that because the practice of law is regulated by the Rules of Professional Conduct, the supreme court rules and the Illinois Supreme Court's own set of professional standards, a higher burden is imposed on attorneys than, for example, "common factory workers" or salespersons. Accordingly, plaintiff maintains that attorney negligence should be considered the equivalent of willful or deliberate misconduct under section 602(A) of the Act.

Messer & Stilp's argument presents a question of statutory interpretation. We are mindful that the fundamental canon of statutory construction is to ascertain and give effect to the intention of the legislature. *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454, 657 N.E.2d 997, 999 (1995). Normally, the language employed by the legislature is the best indication of legislative intent. *Kirwan v. Welch*, 133 Ill. 2d 163, 165, 549 N.E.2d 348 (1989). Accordingly, when the plain language of the statute is clear and unambiguous, the legislative intent that is discernable from the language must prevail. *Land v. Board of Education*, 202 Ill. 2d 414, 421-22, 781 N.E.2d 249, 254 (2002). Moreover, courts should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the enactment. *People ex rel. LeGout v. Decker*, 146 Ill. 2d 389, 394, 586 N.E.2d 1257, 1259 (1992).

Applying these principles to the case at hand, we discern nothing in the plain language of section 602(A) to indicate that the legislature intended to differentiate between the misconduct standard governing the various categories of professions or occupations regulated by the Act. The statute unequivocally applies equally to all employees across the board; there are no exceptions in the Act based upon the nature or type of employment or the designation or position of the employee. Nor are we at liberty to depart from the plain language of the statute by reading into it exceptions, limitations or conditions that the legislature did not express.

Moreover, our research has failed to reveal any Illinois precedent differentiating the misconduct standard in the manner urged by plaintiff. However, given that we have previously determined that the Pennsylvania unemployment benefits statute is similar to ours, we may seek guidance from Pennsylvania law. See *Popoff v. Department of Labor*, 144 Ill. App. 3d 575, 578, 494 N.E.2d 1266, 1268 (1986) (Illinois reviewing courts, having determined that Pennsylvania's unemployment statute is similar to the Illinois entitlement, have relied upon Pennsylvania jurisprudence in adjudicating "voluntary leaving" under this section of the Act). Hence, we find instructive the teaching of

*Navickas v. Unemployment Compensation Review Board*, 567 Pa. 298, 787 A.2d 284 (2001), where a staff nurse was denied unemployment benefits following termination for failing to properly dilute an antibiotic before administering it to a patient. In reinstating benefits, the Pennsylvania Supreme Court reasoned that the lower court's adoption of an *ad hoc* higher standard of care for health care workers would permit any act of negligence or inadvertance to be deemed willful misconduct. Rejecting that view, the court held:

> "The [c]ourts are not authorized to dilute [the] standard premised upon perceived special needs of various occupations or employees. Any such request, being in essence a question of policy, is more properly directed to the General Assembly." *Navickas*, 567 Pa. at 309, 787 A.2d at 291.

Earlier, an identical result obtained in *Norman Ashton Klinger & Associates v. Commonwealth*, 127 Pa. Commw. 293, 561 A.2d 841 (1989), where, as in the case *sub judice*, the attorney claimant was terminated after several months of employment for "many errors." Finding that termination should not disqualify the claimant from unemployment benefits, the court reasoned:

> " ' "Mere incompetence, incapacity or inexperience causing poor work performance, will not support a discharge for willful misconduct." ' [Citation.]" *Norman*, 127 Pa. Commw. at 297, 561 A.2d at 843.

Other states employ the willful misconduct standard in disqualifying claims for unemployment benefits. *In re Marten*, 255 A.D.2d 638, 680 N.Y.S.2d 28 (App. Div. 1998), claimant nursing home supervisor failed to assess an elderly resident's complaints of pain, told co-workers that she believed the resident was faking the reported pain and not to provide any medication or call the resident's doctor. The resident, who suffered from coronary artery disease, died several hours later of acute heart failure. In affirming the denial of benefits, the reviewing court applied the prevailing New York standard:

> "In order for a claimant's conduct to rise to the level of disqualifying misconduct for unemployment insurance purposes, the misconduct must either be detrimental to the employer's interests or a violation of a reasonable work condition. *** Mere negligence or carelessness, although sufficient for termination, is not enough to disqualify a person from receiving unemployment insurance benefits." *Marten*, 255 A.D.2d at 638, 680 N.Y.S.2d at 28-29.

Conversely, in *Brewington v. Administrator of the Office of Employment Security*, 497 So. 2d 418, 419 (La. App. 1986), a nurse's failure to precisely follow hospital rules with regard to medication orders due to heavy workload and pressing duties did not constitute intentional or

deliberate wrongdoing so as to disqualify her from unemployment benefits.

In Massachusetts, denial of unemployment benefits, which originally required both "deliberate misconduct" and "wilful disregard" of the employer's interest, was later modified to include a " 'knowing violation of a reasonable *** rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence.' " *Still v. Commissioner of Employment & Training*, 423 Mass. 805, 810-11, 672 N.E.2d 105, 110-11 (1996). Similarly, in *Roberts v. Holland & Knight LLP*, 728 So. 2d 327 (Fla. App. 1999), the claimant, although cognizant of his employer's conflict of interest policy, was terminated after attempting to pursue a business relationship with the Miami Herald, a client of the firm. Disqualification of benefits was upheld upon a determination of misconduct based upon the claimant's disregard of standards of behavior that the employer had the right to expect from its employee. *Roberts*, 728 So. 2d at 328.

However, a number of other jurisdictions additionally employ a stringent carelessness or negligent standard of disqualification, where it is of such degree that it manifests equal culpability, wrongful intent or evil design, or to show an intentional disregard of the employer's interests or of the employee's duties to his employer. *Amador v. Unemployment Insurance Appeals Board*, 35 Cal. 3d 671, 678, 677 P.2d 224, 227, 200 Cal. Rptr. 298, 301 (1984) (histotechnician's refusal to perform grosscutting of tissue samples upon belief the procedure exceeded her capabilities did not evince culpability or bad faith necessary to evoke the disqualification of unemployment insurance benefits).

The foregoing standard was also applied in *Yost v. Unemployment Appeals Comm'n*, 848 So. 2d 1235, 1238 (Fla. App. 2003). In *Yost*, although a social worker's inability and incapacity to properly manage his caseload was a proper basis for termination, his conduct did not manifest culpability or evil design required to warrant qualification of unemployment compensation benefits. See also *Yoldash v. Review Board of the Indiana Employment Security Division*, 438 N.E.2d 310, 314 (Ind. App. 1982) (outburst of abusive and offensive language directed to superiors constituted disqualifying misconduct, thereby rendering employee ineligible for unemployment compensation benefits); *Reigelsberger v. Employment Appeal Board*, 500 N.W.2d 64, 66 (Iowa 1993) (truck driver's refusal to undergo treatment for alcoholism constituted insubordination justifying denial of unemployment benefits); *Parks v. Employment Security Comm'n*, 427 Mich. 224, 236, 398 N.W.2d 275, 281 (1986) (city employee's termination for violation

of residency requirement amounted to conduct showing a disregard of her employer's interest thereby disqualifying the employee for unemployment benefits); *Kemper County School District v. Mississippi Employment Security Comm'n*, 2001—CA—00303—COA (¶5) (Miss. 2002) (food service manager's termination for failure to follow employer's policies and procedures did not manifest an intentional and wanton disregard of the school district's interest sufficient to evoke denial of unemployment benefits); *Eastex Packaging Co. v. Department of Industry, Labor & Human Relations*, 89 Wis. 2d 739, 753, 279 N.W.2d 248, 254 (1979) (employee's disregard of instruction, resulting in accidental damage to machinery, was an isolated act of carelessness that did not justify denial of benefits under employee misconduct standard); *Aspen Ridge Law Offices, P.C. v. Wyoming Department of Employment*, 2006 WY 125, ¶15, 143 P.3d 911, ¶15 (Wyo. 2006) (legal secretary's failure to timely review relevant court files and prepare of requested affidavit was an isolated instance of ordinary negligence that did not constitute disqualifying misconduct).

■ We are further mindful that our legislature has expressly rejected the argument that carelessness or negligence alone should be equated with willful and deliberate misconduct. Plaintiff's argument harkens back to a day when either willful or wanton conduct or carelessness or negligence could constitute misconduct under the Act. *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 511-12, 475 N.E.2d 879, 885 (1985). However, the present definition of "misconduct," which was added to section 602(A) (Pub. Act 85—956, eff. January 1, 1988), contained no reference to carelessness or negligence. "Deliberate" and "willful" misconduct is required. See *Siler v. Department of Employment Security*, 192 Ill. App. 3d 971, 975, 549 N.E.2d 760, 763 (1989) ("This indicated that the legislature intended that persons discharged for incapacity, inadvertence, negligence or inability to perform assigned tasks should receive unemployment benefits").

Accordingly, we decline Messer & Stilp's invitation to depart from the plain language of the statute in the manner suggested. We find that the Board properly rejected the argument that an attorney's negligent acts should be equated with willful and deliberate misconduct. The Board's finding that claimant should be held to the same standard as any other claimant in determining whether misconduct occurred is in conformance with the present requirements of the law.

■ We next consider whether the Board properly determined that claimant's work performance did not warrant discharge for willful misconduct. Preliminary to that consideration, however, we must first address the Board's contention that Messer & Stilp forfeited this argu-

ment because it failed to raise the issue in the circuit court. Support for the forfeiture claim reposes in Messer & Stilp's complaint for administrative review and, specifically, the allegation that the Board's finding that defendant is not held to standards of professional practice is clearly erroneous as a matter of law. Notably, Messer & Stilp did not allege that the Board's finding of negligence rather than willfulness was contrary to the manifest weight of the evidence or that its application of facts to law was clearly erroneous. Rather, in its argument before the circuit court, Messer & Stilp resolutely defined the issue, "There's really one question for review here, and that is whether if a claimant is an attorney does a different set of standards apply in proving misconduct ***." Nor did Messer & Stilp argue that, based on the evidence, the statutory standard of willful misconduct had indeed been satisfied. The Board's forfeiture argument finds additional support in the circuit court's judgment: "The decision of the Board is affirmed as it is neither against the manifest weight of the evidence nor contrary to law nor clearly erroneous." Tellingly, the notice of appeal simply asserts that the decision should be reversed as "contrary to the law."

We find merit in the Board's contention that nowhere in the administrative review proceedings did Messer & Stilp allege or argue that claimant engaged in willful misconduct. The issue is therefore forfeited and cannot be raised for the first time before this court. See *Rispoli v. Police Board*, 188 Ill. App. 3d 622, 634-35, 544 N.E.2d 1063, 1071-72 (1989); *Smith v. Ashley*, 29 Ill. App. 3d 932, 332 N.E.2d 143 (1975).

Even assuming the bar of forfeiture did not prevail, we do not perceive that Messer & Stilp's position is meaningfully improved. As noted, in determining whether the Board correctly determined that claimant did not commit willful misconduct, our inquiry involves a mixed question of law and fact. We must therefore determine whether the facts support the Board's findings and conclusions, which rejected any willful or deliberate violation of plaintiff's policies or rules. See *AFM Messenger Service*, 198 Ill. 2d at 392, 763 N.E.2d at 280.

Messer & Stilp's claim of willful misconduct is bottomed on the firm's practice and policy memorandum claimant was given upon commencement of her employment. The memorandum states that it was the responsibility of all employees to meet deadlines for all tasks and report back as to compliance. In testimony before the referee, Mr. Stilp complained primarily about claimant's deficiencies in drafting a lease and that she had also neglected her assigned projects. As evidence of claimant's failings, Stilp pointed to a September 2, 2006, e-mail noting that claimant, for the third time, had failed to correct a typographi-

cal error on a lease which left an ambiguity as to the rent term. According to Stilp, this third offense evinced repeated violations of the firm's work rules which justified her termination for misconduct.

At the referee's hearing, in response to the accusation that she had mishandled the lease, claimant testified that she had inherited the job from another attorney in the office. She explained that the lease was approximately 36 pages in length, including schedules, and required many changes and corrections. Although claimant acknowledged that she had inadvertently missed the error concerning the rental term, she denied that she acted intentionally.

Messer & Stilp further maintains that claimant was also required to adhere to the Rules of Professional Conduct, which serve as guideposts for the practice of law. Although this principle is universally recognized, plaintiff failed to identify the particular rule or standard implicated or favor us with the manner in which claimant violated its salutary proscriptions.

■ In its administrative decision, the Board recognized that claimant's "work was careless, it was negligent, it was substandard—all true." However, the Board correctly rejected the referee's abandonment of the deliberate and willful standard set forth in section 602(A) of the Act, and the established case law, in favor of a higher standard that applies specifically to attorneys.

We concur in the Board's conclusion that the business decision to terminate employment based on unacceptable performance does not equate to the standard of misconduct required to deny unemployment benefits. The employer must prove by a preponderance of the competent evidence that the claimant was deliberately and willfully failing to perform her job in a satisfactory manner. Manifestly, carelessness and poor performance can certainly justify termination; yet, standing alone, they "do not make an employee ineligible for [unemployment benefits]" (*Wrobel v. Department of Employment Security*, 344 Ill. App. 3d 533, 537, 801 N.E.2d 29, 34 (2003), citing *Zuaznabar v. Board of Review of the Department of Employment Security*, 257 Ill. App. 3d 354, 359, 628 N.E.2d 986, 990 (1993) (to disqualify an employee from receiving unemployment benefits, "an employer must satisfy a higher burden than merely proving that an employee should have been rightly discharged")). The Board correctly determined that Messer & Stilp has failed to meet that burden here.

## CONCLUSION

For the foregoing reasons, we find that Messer & Stilp has failed to demonstrate that the Board's decision granting claimant unemployment benefits was clearly erroneous or deficient as a matter of law.

Accordingly, we affirm the judgment of the circuit court upholding the decision of the Board.

Affirmed.

TULLY and O'MARA FROSSARD, JJ., concur.