2023 IL App (1st) 221089-U

No. 1-22-1089

Order filed August 14, 2023.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| RONALD KOLNICKI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 2019 CH 7711 |
| THOMAS J. DART, in His Official Capacity as | ) | |
| Sheriff of Cook County; THE COOK COUNTY | ) | |
| SHERIFF'S MERIT BOARD; and COOK | ) | The Honorable |
| COUNTY, as Indemnitor, | ) | Caroline Kate Moreland, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE LAVIN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's judgment confirming the decision of the Cook County Sheriff's Merit Board, terminating plaintiff from his employment as a correctional sergeant because the decision was not against the manifest weight of the evidence. We dismiss plaintiff's appeal for lack of this court's jurisdiction as it relates to our review of the lower court's December 16, 2019, order dismissing his claim challenging the Board's composition, since plaintiff did not file an appeal from that order within 30 days after the court entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 2    Ronald Kolnicki, a former correctional sergeant, appeals from the circuit court's order confirming the decision of the Cook County Sheriff's Merit Board (Board), terminating his employment by the Sheriff of Cook County, Thomas J. Dart (Sheriff).

¶ 3    On appeal, Sergeant Kolnicki argues that the Board's findings were not supported by the evidence, that his termination was not for just and sufficient cause, and that the Board was improperly constituted at the time of his administrative proceedings. We disagree, and for the reasons that follow, we affirm in part and dismiss in part.

¶ 4                                    I. BACKGROUND

¶ 5    In February 2016, the Sheriff filed a complaint with the Board seeking Sergeant Kolnicki's termination after Sergeant Kolnicki witnessed Anthony Nuniz, a detainee, being assaulted by James Micetich, a correctional officer under Sergeant Kolnicki's supervision. Specifically, the complaint alleged that Sergeant Kolnicki failed to intervene to stop Officer Micetich from using excessive force on Nuniz, that Sergeant Kolnicki failed to notify his supervisor of the alleged assault, and that Sergeant Kolnicki failed to properly document the incident, in violation of his duties as a correctional sergeant. The complaint alleged that Sergeant Kolnicki's actions violated several orders, rules, and regulations of the Cook County Department of Corrections (Department) and the Board.

¶ 6    The Board, comprised of Chairman James P. McNally, Vice-Chairman Byron Brazier, Secretary John Dalicandro, and members Kim R. Widup, Vincent T. Winters, Juan L. Baltierres, Patrick M. Brady and Kimberly Pate Godden, conducted hearings on May 22, 2017, May 23, 2017, July 6, 2017, and September 14, 2017. The following evidence was adduced at those hearings.

¶ 7      Sergeant Kolnicki was hired as a correctional officer by the Sheriff on November 26, 2007, and was later promoted to the position of a correctional sergeant on August 21, 2011. He was assigned to the Cook County Department of Correction's Cermak Facility in 2014. Sergeant Kolnicki's office was located in the basement at Cermak, near the emergency room, where detainees are taken for medical examinations and treatment. Correctional sergeants, like Sergeant Kolnicki, wear white uniform shirts, whereas correctional officers of lower ranks wear blue uniform shirts. As a correctional sergeant, Sergeant Kolnicki was responsible for directing and supervising correctional officers, observing their job performance, and taking corrective action when necessary. He was also responsible for ensuring all applicable Sheriff's rules, regulations, policies, procedures, and orders, were adhered to by subordinates. Furthermore, Sergeant Kolnicki was tasked with recommending disciplinary action for any subordinate found to have violated those rules, regulations, policies, procedures, and orders, and ensuring written incident reports were created, among other things.

¶ 8      Around 11 p.m. on May 26, 2014, Sergeant Kolnicki was on duty in the emergency room at Cermak when he met with Sergeant Hugh Walsh regarding an inmate, Donald Lee, who was being involuntarily admitted to the hospital. Meanwhile, an altercation broke out between two other inmates, Lovell Williams and Nuniz, both housed in Division II at Cermak. Williams and Nuniz were subsequently taken to the emergency room at Cermak where they were evaluated. Following his medical evaluation, Nuniz was handcuffed and taken to the waiting area in the basement. At that time, Officers Micetich and Hernan Mosquera were assigned to the waiting area.

¶ 9      Sometime thereafter, Nuniz became disruptive and refused to comply with Officers Micetich's and Mosquera's orders, leading them and a few other officers to grab Nuniz by the

neck and shoulder to try and throw him down on the ground. According to several witnesses, Officer Micetich then proceeded to beat Nuniz, twisting Nuniz's elbow, kicking and stepping on Nuniz's back, and punching Nuniz in the face. According to Williams, he heard a bone crack when Officer Micetich hit Nuniz in the face, observing that Nuniz's face "swole [*sic*] up as big as a melon." Officer Micetich then cuffed Nuniz's hands behind his back and his legs under a bench (also known as "hogtying"). Nuniz testified that Officer Micetich informed him there were no security cameras at Cermak.

¶ 10    Several correctional officers witnessed the assault, including Officers Anthony Owens and Jacqueline Myers. Detainee Williams was also present. According to some witnesses, Sergeant Kolnicki was standing about 15 to 20 feet away from Nuniz and Officer Micetich. Sergeant Kolnicki had an obstructed view of them and was wearing his white sergeant shirt, talking to a female officer. Yet, Sergeant Kolnicki did not intervene to stop the assault of Nuniz, did not reprimand any of the officers involved in it, and did not report the incident to anyone. Moreover, according to Officer Owens, he asked Sergeant Kolnicki if he should file an incident report since he saw the assault of Nuniz, but Sergeant Kolnicki told him that he "didn't need to do that."

¶ 11    At some point during Sergeant Kolnicki's shift, a paramedic told him that Nuniz needed to return to the emergency room for additional treatment. Notwithstanding, Nuniz was not given medical attention at that time, even though he appeared seriously injured. Instead, he was sent back to Division II, where he reported the assault to the lieutenant on duty, Sara Soto. Nuniz was then taken back to the Cermak emergency room where he was diagnosed with a concussion and a fractured eye socket orbital wall, leading him to be transported to John Stroger Hospital for

further treatment. Aside from those injuries, Nuniz also sustained various other injuries to his body, and he continues to suffer long-term effects from the assault, including vision problems.

¶ 12    Following the assault of Nuniz, Sergeant Kolnicki did not recommend any discipline for the officers involved in the assault, even though they were under his supervision at the time. Moreover, Sergeant Kolnicki did not file an incident report or a witness statement concerning the assault, nor did he instruct Officer Micetich to do so, as required by the Sheriff's orders and rules. In fact, Sergeant Kolnicki failed to report the assault at all to anyone. Instead, it was Lieutenant Soto who filed an incident report. As stated, she spoke to Nuniz immediately after he was assaulted, then reported the assault to Superintendent Hugh Walsh, who instructed her to send Nuniz back to the Cermak emergency room for more treatment.

¶ 13    Superintendent Walsh subsequently asked Sergeant Kolnicki about the incident, but Sergeant Kolnicki responded that nothing had happened. Superintendent Walsh, however, had observed Nuniz in the Cermak emergency room with a black eye that was swollen shut. Additionally, when Superintendent Walsh met with Nuniz regarding the assault, Nuniz initially asked him, "are you going to kick my ass, too?" Walsh responded "no," indicating that he was there to discuss the assault. Although Sergeant Kolnicki's logbook indicated he was not present in the Cermak basement when the incident occurred, Nuniz confirmed that Sergeant Kolnicki was the sergeant who was present during the assault.

¶ 14    While Nuniz was at Stroger Hospital recovering from his injuries, the Sheriff's Department of Investigations began a criminal investigation into the assault. Gregory Ernst, the Deputy Director of that Department, was assigned to interview Nuniz about the assault. Director Ernst worked in conjunction with the Federal Bureau of Investigation (FBI), which was also investigating the assault. Director Ernst and his partner, Ryan Killacky, interviewed Nuniz at

Stroger on May 27, 2014, and photographed his injuries, which showed severe bruising around his eye and over much of his body. In a second interview conducted on May 29, 2014, Nuniz identified Officers Micetich and Mosequera in lineups as being involved in the assault, and more specifically, he identified Officer Micetich as the one who caused his injuries. Nuniz also identified Sergeant Kolnicki in a third lineup as the sergeant who was present during the assault. Finally, Nuniz identified Officers Owens and Meyers as being present during the assault as well.

¶ 15    The next day, on March 30, 2014, Director Ernst interviewed four detainees (Dylan Smith, Joseph Kalamaris, Brian McKenzie and Michael Raggs) who all stated that Sergeant Kolnicki was present during the assault of Nuniz. Meanwhile, the FBI's investigation into the assault proceeded. FBI Agents Eugene Jackson and Courtney Corbett interviewed Sergeant Kolnicki, asking him about the assault of Nuniz. Sergeant Kolnicki indicated that he was unaware of and did not witness any use of force against Nuniz, did not call medical staff at Cermak to let them know that Nuniz was returning to the emergency room for treatment, and did not receive any paperwork regarding a use-of-force incident involving Nuniz. When Agent Corbett informed Sergeant Kolnicki that his statements contradicted those obtained by other witnesses, Sergeant Kolnicki responded that the other statements were false and that he did not wish to change his own statements to the FBI agents.

¶ 16    We note that FBI interviews of Officers Mosquera and Meyers revealed that those officers, along with Officers Micetich and Cruz, had met twice for breakfast before their respective interviews with the FBI. Additionally, Officer Micetich eventually pled guilty to federal civil rights violations stemming from the incident.

¶ 17    In any event, the Office of Professional Review (OPR) also conducted an administrative investigation into the assault of Nuniz. Investigator Tia Parks Jefferson was assigned to

investigate the assault and noted that Sergeant Kolnicki had not submitted a use-of-force report or any witness statement concerning the assault. Likewise, Investigator Parks Jefferson observed that Sergeant Kolnicki was the only sergeant assigned to Cermak for the 11:00 p.m. – 7:00 a.m. shift the night/day that Nuniz was assaulted. Sergeant Kolnicki claimed he was with Superintendent Walsh when Nuniz was assaulted around 11:35 p.m., but Superintendent Walsh stated during his OPR interview that he had already left Cermak when the assault occurred. Additionally, while Sergeant Kolnicki claimed that his logbook and the testimony of two officers present during the assault stating Sergeant Kolnicki was not there sufficiently established that he did not witness the incident, this was contradicted by the testimony of three witnesses who were all present during the assault, among other evidence.

¶ 18      Moreover, Sergeant Kolnicki was unable to account for his actions between 11:35 p.m. on May 26, 2014, and 12:07 a.m. on May 27, 2014. Sergeant Kolnicki's statements to Investigator Parks Jefferson continued to contradict both his earlier statements and those given by other witnesses, leading Investigator Parks Jefferson to conclude that Sergeant Kolnicki was "not entirely truthful during his interviews with the FBI and OPR." In conclusion, Investigator Parks Jefferson found that:

> "Sergeant Kolnicki was present during the incident and failed to intervene to stop the use of unreasonable force, failed to ensure the proper paperwork was submitted, failed to make the proper notifications and failed to provide the detainee with medical attention after the incident."

¶ 19      Based on the foregoing evidence, and after assessing the credibility of the witnesses, the Board found that Sergeant Kolnicki had violated Sheriff's Order 11.2.1.0 (VIII)(C), (D)(2), requiring, as relevant here, correctional sergeants to intervene during excessive force incidents

and to report such incidents by providing a witness statement to the responding supervisor before the end of the sergeant's shift. Additionally, the Board found that Sergeant Kolnicki had violated Sheriff's Order 11.2.2.0(V)(C)(2), (3), (D)(3), requiring supervisors who have been notified of a use-of-force incident to follow all department protocols before the end of their shift, including ensuring medical care is provided to all parties, notifying the watch commander and the Cook County Communication Center of the incident, and photographing or video recording everyone involved in the incident with or without injuries, among other things. The Board further found that Sergeant Kolnicki had violated Sheriff's Order 11.2.20.0(VI)(D)(25), requiring employees to cooperate and be truthful with external and/or internal agencies in an investigation of a criminal or civil matter.

¶ 20    The Board likewise found that Sergeant Kolnicki had violated Department General Orders 9.2.1 and 24.9.1.0, setting forth the procedures and requirements for, as relevant here, sergeants to notify and/or report excessive force incidents that occurred during their shift.[1] Finally, the Board found that Sergeant Kolnicki had violated article X, paragraph B, of the Board's rules and regulations by violating the aforementioned orders. In reaching its conclusion, the Board noted that, while the facts were contested by way of some conflicting evidence, "the weight of the evidence show[ed] through eyewitness identifications that [Sergeant Kolnicki] was present at the time of the incident with Nuniz and [Officer] Micetich." Consequently, the Board issued its decision terminating Sergeant Kolnicki from his employment on May 24, 2019.[2]

¶ 21    The next month, Sergeant Kolnicki filed, as relevant here, a complaint in the circuit court of Cook County, seeking administrative review of the Board's decision, which, he argued, was

---

[1]Sergeant Kolnicki's brief incorrectly identifies the General Order as 24.8.1.0, rather than 24.9.1.0.

[2]The Board ordered Sergeant Kolnicki's termination effective February 2, 2016.

against the manifest weight of the evidence. Sergeant Kolnicki also asserted, for the first time, that the Board was invalidly constituted during his administrative hearings. The Sheriff moved to dismiss Sergeant Kolnicki's claim challenging the Board's composition, arguing that his claim was untimely. The circuit court ultimately agreed and dismissed Sergeant Kolnicki's claim, concluding the *de facto* officer doctrine, which validates appointees' acts later found to be deficient, precluded Sergeant Kolnicki's untimely challenge the Board's composition.[3] See *Acevedo v. Cook County Sheriff's Merit Board*, 2019 IL App (1st) 181128, ¶ 20 (noting that the *de facto* officer doctrine confers validity upon acts performed by persons acting under the color of official title even though their authority is subsequently deemed improper).

¶ 22     Sergeant Kolnicki later moved, unsuccessfully, to reconsider the court's ruling as to that claim. Sergeant Kolnicki then obtained a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) to allow the immediate appeal of the lower court's dismissal of his claim challenging the Board's composition, but he never filed an appeal from that order.

¶ 23     On June 24, 2022, the circuit court dismissed Sergeant Kolnicki's remaining claims and affirmed the Board's decision terminating Sergeant Kolnicki from his employment. In reaching its conclusion, the court found there was just cause to terminate Sergeant Kolnicki and that the Board's decision was not arbitrary or capricious. This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25                              A. The Board's Decision

¶ 26     We first address Sergeant Kolnicki's argument that the Board's decision to terminate him was against the manifest weight of the evidence.

---

[3]We note that after the circuit court's initial ruling, the case was remanded to the Board for compliance with the Open Meetings Act.

¶ 27    The Board's decision is an administrative decision and judicial review is governed by Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2018)). In reviewing an administrative agency's decision, we review the decision of the agency, not the decision of the circuit court. *Rios v. Cook County Sheriff's Merit Board*, 2020 IL App (1st) 191399, ¶ 29. "We are mindful that an administrative agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct." *Messer & Stilp, Ltd. v. Department of Employment Security*, 392 Ill. App. 3d 849, 855 (2009). Additionally, we will not reverse an agency's decision unless it is against the manifest weight of the evidence, *i.e.*, only when the opposite conclusion is clearly evident. *Rios*, 2020 IL App (1st) 191399, ¶ 29.[4] Where, as here, the record supports the agency's decision, we must affirm that decision. *Rios*, 2020 IL App (1st) 191399, ¶ 29.

¶ 28    The record in this case supports the Board's decision to terminate Sergeant Kolnicki because it contains sufficient evidence showing that Sergeant Kolnicki violated Sheriff's Orders 11.2.1.0 (VIII)(C), (D)(2), 11.2.2.0 (V)(C)(2), (3), (D)(3) and 11.2.20.0(VI)(D)(25) when he witnessed the use of excessive force against Nuniz, failed to both intervene to stop the assault of Nuniz and report it, and when he failed to provide a truthful account of the events that unfolded that night/day. By violating those orders, the Board found that Sergeant Kolnicki necessarily violated Department General Orders 9.2.1 and 24.9.1.0, and article X, paragraph B, of the Board's rules and regulations, since those orders, rules, and regulations require sergeants, like

---

[4]Sergeant Kolnicki incorrectly asserts in his brief that both the manifest weight and clearly erroneous standards of review apply to our review of the Board's decision. Because Sergeant Kolnicki has not identified a question of law involved on appeal, and we have not found one, only the manifest weight standard applies. See *Messer & Stilp, Ltd.*, 392 Ill. App. 3d at 855-56 (noting that the manifest weight standard applies where, as here, "our review is limited to ascertain whether such findings of fact are against the manifest weight of the evidence").

Sergeant Kolnicki, to report any excessive use-of-force incidents and he failed to do so in this case.

¶ 29    While Sergeant Kolnicki asserts, as he did below, that his logbook and the testimony of two officers present during the assault who stated Sergeant Kolnicki was not there, established he did not witness the assault of Nuniz, three witnesses who were present all testified that Sergeant Kolnicki was there and observed the assault of Nuniz. Sergeant Kolnicki claims the testimony of those witnesses was not credible, but he has not provided any support for that claim. Furthermore, as set forth, the FBI's investigation uncovered four witnesses who all stated that Sergeant Kolnicki was present during the assault of Nuniz (see *supra* ¶¶ 14-15). Regardless, the Board found the testimony credible and ultimately relied on it in making its decision to terminate Sergeant Kolnicki. Because the record contains sufficient evidence supporting the Board's decision, as detailed above, that decision must be affirmed. See *Rios*, 2020 IL App (1st) 191399, ¶ 29.

¶ 30    Based on the foregoing, we need not address Sergeant Kolnicki's claim that his termination was "not for just and sufficient cause," as he has simply set forth the same arguments that we already addressed above.

¶ 31                            B. The Board's constituency

¶ 32    Next, Sergeant Kolnicki argues that, even if the Board's decision was not against the manifest weight of the evidence, that decision should be invalidated because the Board was unlawfully constituted at the time of his administrative proceedings.

¶ 33    In response, defendants assert that Sergeant Kolnicki has forfeited the issue since he elected to not appeal the circuit court's dismissal of his constituency claim after he obtained a Rule 304(a) finding (see *supra* ¶ 22) that there was no just reason for delaying either

enforcement or appeal or both. Forfeiture aside, defendants assert that the circuit court properly dismissed Sergeant Kolnicki's claim because the Board's final decision terminating Sergeant Kolnicki's employment was not made until after the Board had been reconstituted in accordance with Public Act 100-562, § 5 (eff. Dec. 8, 2017); thus, Sergeant Kolnicki was not affected by the Board's allegedly unlawful composition. Defendants further assert that the *de facto* officer doctrine precluded Sergeant Kolnicki's untimely claim because Sergeant Kolnicki did not object to the Board's composition until more than a year after he was terminated by the Board.

¶ 34    Sergeant Kolnicki replies that the Board's decision is void, and therefore, can be challenged at any time regardless of forfeiture. On the merits, Sergeant Kolnicki argues that, even if the Board had been properly reconstituted when it rendered its decision terminating him, the Board's decision is still void because the Board was invalidly constituted during his administrative hearings.

¶ 35    Initially, although the parties have not addressed the issue, we must determine whether we have jurisdiction to review Sergeant Kolnicki's challenge to the Board's constituency. Rule 304(a) provides, in relevant part, that "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a). That rule further provides that Illinois Supreme Court Rule 303 (eff. July 1, 2017) governs "[t]he time for filing a notice of appeal" and that "[i]n computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required finding shall be treated as the date of the entry of final judgment." Ill. S. Ct. R. 304(a). It is well-settled that Rule 303 requires an appeal to be filed within 30 days of the entry of a final judgment or order. Ill. S. Ct. R. 303(a)(1).

¶ 36    Here, the circuit court dismissed Sergeant Kolnicki's claim challenging the Board's composition on December 16, 2019. The court denied Sergeant Kolnicki's motion to reconsider that judgment on September 29, 2021. The court then granted Sergeant Kolnicki's motion for a Rule 304(a) finding on November 30, 2021. Pursuant to Rule 304(a), we must treat the entry of the court's Rule 304(a) finding as the date of the entry of the final, appealable order. Thus, as defendants have correctly observed, Sergeant Kolnicki had to appeal the dismissal of his claim challenging the Board's composition within 30 days of the lower court's November 30, 2021, order. Because Sergeant Kolnicki did not file an appeal within 30 days of that order, his instant appeal of that particular issue is untimely and must be dismissed for lack of this court's jurisdiction. See *Farmar v. Crane*, 32 Ill. App. 3d 383, 391 (1975) (dismissing the plaintiff's cross-appeal because the plaintiff did not appeal the order at issue until more than 30 days after the Rule 304(a) finding was entered); see also *Elg v. Whittington*, 119 Ill. 2d 344, 354 (1987) (noting that a Rule 304(a) finding "places the piecemeal appellant in a somewhat worse position than the usual appellant, who need not file a notice of appeal until 30 days after the denial of a motion attacking the original judgment," but "this difference in treatment is justified by the fact that a Rule 304(a) appeal is an exception to the general policy disfavoring piecemeal appeals").

¶ 37    Finally, to the extent Sergeant Kolnicki asserts a void order may be directly or collaterally attacked at any time in any court, that is only true when the party attacks an allegedly void order in a court that itself has jurisdiction. Our supreme court has explained that, while a void order generally may be attacked at any time in any court, "[t]his legal proposition *** does not act to confer appellate jurisdiction on a reviewing court if such jurisdiction is otherwise absent." *EMC Mortgage Corporation v. Kemp*, 2012 IL 113419, ¶ 15. In other words, "the rule allows a party the ability to always raise the issue of whether an order is void in an appeal where

appellate jurisdiction exists and the case is properly before the court of review." As we have pointed out, we lack jurisdiction to review the lower court's December 16, 2019, order dismissing Sergeant Kolnicki's claim challenging the Board's composition, because Sergeant Kolnicki did not appeal that order within 30 days of the court's November 30, 2021, order containing the Rule 304(a) finding.

¶ 38                                III. CONCLUSION

¶ 39     For the reasons set forth above, we affirm the circuit court's judgment confirming the Board's decision in this case. We dismiss for lack of this court's jurisdiction the portion of Sergeant Kolnicki's appeal that relates to the court's December 16, 2019, order dismissing his claim challenging the Board's constituency.

¶ 40     Affirmed in part; dismissed in part.