# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald W. Emert, Jr.,           :
                     Petitioner           :
                                    :
                 v.                  :   No. 230 C.D. 2016
                                      :   Submitted: July 29, 2016
Unemployment Compensation Board   :
of Review,                        :
                    Respondent           :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                 **FILED: September 1, 2016**

        Ronald W. Emert, Jr. (Claimant), representing himself, petitions for review from an order of the Unemployment Compensation Board of Review (Board) that denied him unemployment compensation (UC) benefits under Section 402(b) of the UC Law (Law) (voluntary quit).[1]  Claimant contends the Board erred in determining he voluntarily quit his employment with Derby Landscaping, Inc. (Employer).  Upon review, we affirm.

## I. Background

        Claimant worked for Employer as a full-time laborer.  His last day of work was August 6, 2015.  On August 17, Claimant returned to work after a vacation, and he met with Daniel M. Derby, Employer's President and Owner (Owner).  During the meeting, Owner issued Claimant a written reprimand that

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(b).

outlined several issues with Claimant's work performance. Owner provided Claimant a written reprimand in an effort to correct his performance issues and to allow Claimant to "improve the quality of [his] work and attention to detail." Certified Record (C.R.), Item No. 10, Ex. Emp. 1 (written reprimand, 8/6/15), at 1. Owner also discussed with Claimant the fact that he knew Claimant was not at certain job sites when he claimed to be because the Employer-provided truck contained a Global Positioning System (GPS) tracking device.

Claimant replied he no longer worked for Employer and would collect unemployment. Employer did not respond to this statement. Claimant then took out his Employer-provided cell phone and began deleting personal information. Out of fear Claimant would damage the phone, Employer attempted to grab the phone from Claimant. A scuffle ensued. Police were called. While no charges were filed against either party, police escorted Claimant from the premises.

Thereafter, Claimant applied for UC benefits, which a local service center denied. Claimant appealed, and a referee's hearing followed.

At the hearing, Employer was represented by counsel; Claimant was unrepresented. Claimant testified regarding the nature of his job responsibilities with Employer. Claimant further testified Owner terminated his employment because he was not a profitable employee. Claimant then read the police report regarding the scuffle into the record.

On cross-examination, Claimant admitted to concurrently operating his own independent landscaping business while working for Employer. Claimant also admitted he performed work for his own business while working for Employer, and his business is no longer in operation.

For his part, Owner testified he issued Claimant a written reprimand in an effort to inform Claimant of issues with his work performance and to allow Claimant to make improvements in those areas. Owner detailed several of Claimant's work-related performance issues. When Owner would attempt to correct Claimant's work performance verbally, Claimant would become combative and aggressive. Owner told Claimant that Employer's trucks were equipped with GPS tracking devices, and, therefore, he knew Claimant was not on certain job sites as expected. Claimant replied he no longer worked for Employer, and he would just collect unemployment. Owner and Claimant scuffled for possession of an Employer-issued cell phone. When Owner recovered the phone, he learned Claimant used Employer's resources for his own landscaping business.

Employer's office manager, Mary Derby (Office Manager), also testified for Employer. Office Manager explained how information retrieved from the Employer-issued cell phone revealed multiple instances of Claimant using Employer's tools, materials and resources for his own landscaping business.

Employer presented an additional witness, Ethan Derby (Son), Owner's son, who works as a laborer with Employer. Son testified he witnessed

3

the events of August 17, and he confirmed Owner accurately described those events.

After the hearing, the referee found Claimant ineligible for benefits under Section 402(b) of the UC Law. The referee determined, among other things, substantial evidence supported a finding that Owner desired a continuing employment relationship with Claimant at the time of the August 17 meeting, that Owner did not discharge Claimant, and that Owner did not possess the intent to do so. Further, the referee found Claimant voluntarily resigned his employment by virtue of his statements to Owner.

On Claimant's appeal, the Board made its own findings, and it affirmed the referee. Claimant now petitions for review to this Court.

## II. Issue

On appeal,[2] Claimant contends the record does not contain substantial evidence to show he voluntarily quit his employment; rather, Owner terminated Claimant's employment. In support, Claimant relies exclusively on excerpts from the police report filed after the scuffle. Certified Record (C.R.), Item No. 10, Ex. Clmt-1 (police report, dated 8/17/15), at 4.

---

[2] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed or whether constitutional rights were violated. Oliver v. Unemployment Comp. Bd. of Review, 5 A.3d 432 (Pa. Cmwlth. 2010) (en banc).

4

## III. Discussion

In UC cases, the Board is the ultimate fact-finder. Oliver v. Unemployment Comp. Bd. of Review, 5 A.3d 432 (Pa. Cmwlth. 2010) (en banc). As such, issues of credibility and the evidentiary weight given to conflicting testimony are within the Board's exclusive province. Id. The Board may reject the testimony of the claimant if it concludes his testimony is not worthy of belief. Adams v. Unemployment Comp. Bd. of Review, 373 A.2d 1383 (Pa. Cmwlth. 1977). Further, this Court must view the record in the light most favorable to the party prevailing before the Board. Sanders v. Unemployment Comp. Bd. of Review, 739 A.2d 616 (Pa. Cmwlth. 1999). We must give that party the benefit of all reasonable inferences that can be drawn from the evidence. Id.

In addition, "[t]he fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." Tapco, Inc. v. Unemployment Comp. Bd. of Review, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Thus, it is irrelevant whether the record contains substantial evidence to support findings other than those made by the Board; the critical inquiry is whether there is substantial evidence to support the findings actually made. Wise v. Unemployment Comp. Bd. of Review, 111 A.3d 1256 (Pa. Cmwlth. 2015); Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008).

Section 402(b) of the Law states that a claimant shall be ineligible for UC benefits when he voluntarily terminates his employment without necessitous and compelling cause. 43 P.S. §802(b). Whether a claimant voluntarily

5

terminated his employment is a question of law to be determined by examining the Board's findings. Fishel v. Unemployment Comp. Bd. of Review, 674 A.2d 770 (Pa. Cmwlth. 1996); Pa. Liquor Control Bd. v. Unemployment Comp. Bd. of Review, 648 A.2d 124 (Pa. Cmwlth. 1994).

A voluntary quit requires a finding that the claimant had a conscious intention to leave his employment. Procyson v. Unemployment Comp. Bd. of Review, 4 A.3d 1124 (Pa. Cmwlth. 2010). In determining a claimant's intent, this Court must consider the totality of the circumstances surrounding the incident. Id.

Further, a claimant bears the burden of proving the separation is the result of a discharge. Norman Ashton Klinger & Assoc. v. Unemployment Comp. Bd. of Review, 561 A.2d 841 (Pa. Cmwlth. 1989). For an employer's statement to be interpreted as a discharge, the "language must possess the immediacy and finality of firing." Fishel, 674 A.2d at 772. Statements such as "pick up your pay," "turn in your key," "pull your time card," "turn in your uniform," and "there's the door" possess the finality of a firing. Rizzitano v. Unemployment Comp. Bd. of Review, 377 A.2d 1060, 1061 (Pa. Cmwlth. 1977).

In contrast, where an employer's statement presents a claimant with the option of maintaining the employment relationship, this Court does not find a termination. See e.g., Lawlor v. Unemployment Comp. Bd. of Review, 391 A.2d 8 (Pa. Cmwlth. 1978) (holding that employer's advice to claimant that he either change his attitude toward his supervisor or make a decision as to what he was going to do, lacked the immediacy and finality of a firing).

6

Here, the Board made the following relevant findings:

2. On August 6, 2015, [Owner] issued [C]laimant a written warning expressing dissatisfaction with various facets of [C]laimant's work performance as well as his demeanor at work.

3. [C]laimant then went on vacation.

4. When [C]laimant returned from his vacation on August 17, 2015, [Owner] met with him and started discussing additional deficiencies.

5. [Owner], however, had no intention of discharging [C]laimant.

6. [C]laimant became increasingly upset and he stated he was no longer working for [E]mployer and he was going to collect unemployment.

7. At that point, [C]laimant quickly pulled out his [E]mployer provided cell phone and started deleting personal information from the phone.

8. [Owner] feared [C]laimant was trying to damage the phone so he grabbed for it and a scuffle ensued.

9. [Owner] was knocked to the floor and suffered minor injuries.

10. The police were called, however, no charges were filed against either party.

11. [C]laimant alleges he had no intention of quitting his position and when he allegedly asked if he was going to be let go at the end of the conversation [E]mployer responded 'yes.'

Bd. Op., 12/16/15, Findings of Fact (F.F.) Nos. 2-11 (emphasis added). The Board further determined (with emphasis added):

7

Based upon the above [f]indings, <u>which are supported by [E]mployer's [witnesses'] credible testimony and evidence</u>, the Board concludes that [C]laimant quit his position. <u>[C]laimant expressed the necessary intent when he said during the August 17, 2015 meeting, that he was no longer working for [E]mployer and he was going to collect unemployment.</u> Since [C]laimant only asserts that he was discharged, he has not demonstrated necessitous and compelling cause for quitting his position. Therefore, benefits are denied under Section 402(b) of the Law.

Bd. Op. at 2. The credible evidence supports the Board's determination that Claimant voluntarily quit his employment with Employer.

To that end, Owner testified he did not intend to terminate Claimant on August 17, and continuing work was "[a]bsolutely" available. Referee's Hr'g, Notes of Testimony (N.T.), 9/25/15, at 11, 15. Owner confronted Claimant over timesheets which indicated Claimant was present on certain job sites when, in fact, he was not. According to Owner, Claimant responded, "so I don't work here anymore[,] I'll just collect unemployment." N.T. at 11. The Board credited Owner's testimony. Bd. Op. at 2.

Further, Employer's written reprimand to Claimant, which initiated the August 17 meeting, showed Owner wished to provide Claimant "the opportunity to improve the quality of [his] work and attention to detail." C.R., Item No. 10, Ex. Emp. 1at 1. In light of Employer's credited evidence, the Board rejected Claimant's testimony that Employer intended to terminate his employment.

8

In addition, the Board chose not to rely on the out-of-court statements in the reporting officer's narrative in the police report, but instead chose to rely on Owner's first-hand account of Claimant's separation from employment. No error is apparent in this regard. Oliver.[3]

Moreover, as the Board stated, Claimant does not assert he had necessitous and compelling cause to quit his employment. Thus, the Board properly determined he was ineligible for UC benefits under Section 402(b) of the Law.

Accordingly, we affirm.

 

ROBERT SIMPSON, Judge

---

[3] In any event, the statements set forth in the reporting officer's narrative, upon which Claimant relies exclusively, do not indicate the immediacy and finality of a firing. See C.R., Item No. 10, Ex. Clmt-1 (police report, dated 8/17/15), at 4 ("While speaking with [Owner] I learned that he met with a former employee, [Claimant] prior to my arrival to discuss subpar work performance and to consider termination of [Claimant]. … I next spoke with [Son] … He stated that he and his father were speaking with [Claimant] regarding his future with the company at which time [Claimant], (possibly sensing he was about to be terminated) pulled out his cellular phone (owned by [Employer]) and began to delete personal information from the phone. I then spoke with [Claimant] who stated that he felt as if he were being terminated ….") (Emphasis added).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald W. Emert, Jr.,        :
              Petitioner    :
                        :
        v.            :   No. 230 C.D. 2016
                        :
Unemployment Compensation Board  :
Of Review                  :
             Respondent   :

## **O R D E R**

**AND NOW**, this 1st day of September, 2016, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.


_____
ROBERT SIMPSON, Judge