# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neshannock Township,    :
      Petitioner  :
          :
    v.      : No. 2026 C.D. 2016
          : Submitted: May 26, 2017
Unemployment Compensation  :
Board of Review,     :
      Respondent :


BEFORE: HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE JULIA K. HEARTHWAY, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**     **FILED: July 31, 2017**


    Petitioner Neshannock Township, Lawrence County, Pennsylvania (Employer), petitions for review of the order of the Unemployment Compensation Board of Review (Board), affirming the decision of a Referee, which granted Tina Root (Claimant) unemployment compensation benefits. For the reasons set forth below, we affirm.

    Claimant worked as a part-time employee at Employer's skating rink. Claimant applied for unemployment compensation benefits after Employer instructed her to "stop in and turn in [her] keys." (Certified Record (C.R.), Item No. 8 at 6, Claimant's Ex. 1.) The Indiana Unemployment Compensation Service Center (Service Center) issued a determination finding Claimant ineligible for

benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary termination without cause of a necessitous and compelling nature. Claimant appealed the Service Center's determination, and a Referee conducted an evidentiary hearing.

Following the hearing, the Referee issued a decision in which she made the following findings:

1. The claimant was employed by Neshannock Twp. as a full-time management coordinator earning $12.38 per hour from December 20, 2010 through the end of December 201 [sic].

2. As of January 1, 2016, the claimant was a part-time ice rink employee averaging 8 hours per week at $7.75 per hour until April 26, 2016, her last day of work.

3. In January 2015, the claimant was advised that her management coordinator position would be ending at the end of December 2015, as they were replacing the two part-time coordinators with a full-time director.

4. The claimant began attending nursing school in March 2015 in preparation for the loss of her job.

5. When the claimant's job ended in December 2015, she was offered continuing employment as a part-time ice rink employee running the Zamboni machine approximately 8 hours per week.

6. The claimant accepted the part-time position at [sic] advised the employer that once she had taken her board exams and received her nursing license, she would be quitting as she already had an offer of work as a nurse.

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

2

7.    The claimant did not provide employer with an exact date when her employment would end but rather advised them that it was contingent on her passing her board exams.

8.    The claimant, at one point, advised the employer that she would work through March 2016.

9.    The claimant then advised the employer that it was taking longer than expected to be scheduled for the board exam, and she could continue working through April 15, 2016.

10.   When mid-April arrived, the claimant again notified the employer that she had not yet taken her boards, and that she was able to continue working in her part-time position.

11.   The employer continued to schedule the claimant through April 26, 2016.

12.   On May 1, 2016, the claimant reviewed the May work schedule for the part-time rink employees and found she was not scheduled in May.

13.   The claimant sent a text message to the ice rink manager advising that she still had not taken her boards yet and she was able to continue working on Mondays, Wednesdays, and Fridays.

14.   The manager responded that due to the limited hours of the rink, we will not need you to work.

15.   The text message also advised the claimant to stop in and turn in her keys.

16.   The claimant turned in her keys as requested. The claimant's employment ended April 26, 2016, as the employer did not schedule the claimant for any further shifts.

17.   The claimant was able to take her nursing board exams on June 16, 2016, and received a job offer to begin August 8, 2016, for Jameson Care.

18.   The claimant filed an application for unemployment compensation benefits with an effective date of January 3, 2016.

3

19. The claimant filed for and received unemployment compensation benefits for the weeks of May 7, 2016 through June 4, 2016, in the amount of $1,060.

20. The claimant reported to the UC Service Center that she was laid off from employment after receiving the text message from her manager.

(C.R., Item No. 9.) The Referee reasoned that:

> Here, the claimant had notified the employer of her intent to voluntarily terminate employment at some time in the future when she passed her board exams and was able to begin employment as a nurse. However, the claimant had rescinded any specific dates of separation with the employer, and each time the claimant modified her ending date, the employer allowed her to continue working. The employer provided no testimony that they took any steps to replace the claimant prior to her request to extend her employment.

(*Id.*) The Referee concluded that, based on her findings of fact, Claimant did not voluntarily terminate her employment. (*Id.*) The Referee further concluded that Employer failed to show that Claimant's termination resulted from willful misconduct. (*Id.*)

Employer appealed to the Board, which affirmed the Referee's decision. (C.R., Item Nos. 10, 11.) The Board adopted and incorporated the Referee's findings of fact and conclusions of law in its order. (C.R., Item No. 11.) Employer petitioned the Board for reconsideration of its order, which the Board denied. (C.R., Item Nos. 12, 14.) Employer now petitions this Court for review of the Board's order.

4

On appeal,[2] Employer argues that substantial evidence does not support the Board's findings that Claimant did not provide a specific resignation date, Claimant revoked any resignation(s) that she may have made, and Employer did not take steps to replace Claimant before any revocation(s) occurred. Employer also contends that the Board erred in analyzing this matter under Section 402(e) of the Law. Instead, Employer appears to contend that the Board should have considered the matter under Section 402(b) of the Law, relating to voluntary termination without cause of a compelling and necessitous nature.[3]

Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether substantial evidence exists to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 78 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support those

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Substantial evidence is evidence that a reasonable mind might consider adequate to support a conclusion.

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

5

findings. *Id.* The presence of record evidence contrary to the Board's findings of fact is immaterial if substantial evidence supports those findings. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Employer first argues that substantial evidence does not support the Board's finding that Claimant did not provide Employer with a specific termination date. Claimant testified that her voluntary termination would occur after she took and passed her nursing boards, rather than on a pre-determined date. (C.R., Item No. 8 at 7, 9-10.) Employer's first witness, Mark Bucci (Bucci), corroborated this claim, testifying that Claimant never provided Employer with either a specific termination date or notice that Claimant had passed her board exams and would begin employment elsewhere as a nurse. (*Id.* at 23-25.) Employer's third witness, Joe Gierlach, testified that Claimant set her schedule based upon her education and that Employer received no indication as to how long Claimant would stay on to work. (*Id.* at 29.) Furthermore, Claimant testified that she never submitted any type of written or verbal resignation to Employer. (*Id.* at 7.) Claimant reached out to Employer as soon as she found out that Employer did not schedule her to work for the month of May 2016. (*Id.* at 5.) Claimant testified that, in a string of text messages, she informed Employer of her availability to work "Mondays . . . Wednesday[s, and] Friday[s] . . . etc." (*Id.* at 5, Claimant's Ex. 1.) Employer responded that "[d]ue to the limited hours of the rink, we will not need you to work. Could you please stop in and turn in your keys?" (*Id.* at 6, Claimant's Ex. 1.) Substantial evidence, therefore, supports the Board's finding that Claimant "did not provide the employer with an exact date when her employment would end." (C.R., Item No. 9.)

6

Employer next argues that substantial evidence does not support the Board's finding that, if Claimant resigned, she revoked any such resignation. Employer argues that Claimant's testimony and phone records establish that Claimant initially intended to work through the end of March 2016, but she subsequently requested to be taken off Employer's work schedule. (C.R., Item No. 8 at 9-10.) Employer also argues that Claimant voluntarily terminated her employment when she informed Employer that it could take her off the work schedule after the "the next two Mondays and Tuesdays" following the end of "Kids Skate" on April 12, 2016. (*Id.*) The record, however, indicates that Employer consistently modified Claimant's schedule to permit her to work until she had taken and passed her nursing boards. (*See id.* at 9.) Employer checked with Claimant every month before making the work schedule and set her work schedule per her requests. (*Id.* at 24.) Employer continued to talk to Claimant "to find out if she could continue to work." (*Id.* at 25.) Employer "asked [Claimant] if [Claimant] wanted to be on the April schedule . . . and [Employer] thought [Claimant] told [Employer] that [Claimant] could work some in April, maybe to the middle of April, something like that." (*Id.* at 21.) In mid-April, Claimant told Employer "that she could work the remaining two weeks [of April]." (*Id.*) The record indicates that Claimant did, in fact, work "the full month of April," despite any conversation about leaving in March or mid-April.[4] (*Id.* at 11.) Substantial evidence, therefore, supported the Board's finding that Claimant "rescinded any specific dates of separation." (C.R., Item No. 9.)

---

[4] From testimony that Claimant actually worked through April, the Board could logically and reasonably infer that Claimant rescinded any resignation. *See Johnson*, 502 A.2d at 740.

7

Employer finally argues that substantial evidence does not support the Board's finding that even if Claimant rescinded any specific dates of separation, Employer did not take steps to replace Claimant in the interim. Employer argues that it hired a new Zamboni driver to replace Claimant in April. At first glance, the record testimony appears to indicate that replacing Claimant formed at least part of the impetus for hiring a new Zamboni driver. (C.R., Item No. 8 at 26.) Bucci, however, subsequently clarified that Employer hired the new Zamboni driver in response to a *different* employee quitting and not because Claimant restricted her availability to work. (*Id.* at 26-27.) Bucci further testified that prior to hiring the new Zamboni driver, Employer anticipated losing a Zamboni driver other than Claimant. (*Id.* at 27.) Substantial evidence, therefore, supported the Board's finding that, even if Claimant resigned, Employer did not take steps to replace Claimant before Claimant rescinded her resignation. (C.R., Item No. 9.)

Employer also argues that Claimant voluntarily quit her employment such that the Board erred in considering this matter under Section 402(e) of the Law, relating to termination for willful misconduct. The threshold issue when a voluntary quit is alleged is whether the facts surrounding the claimant's separation from employment indicate a voluntary quit or an involuntary separation. *Norman Aston Klinger and Assocs. v. Unemployment Comp. Bd. of Review*, 561 A.2d 841, 842 (Pa. Cmwlth. 1989). This issue is a question of law subject to this Court's review. *Stankiewicz v. Unemployment Comp. Bd. of Review*, 548 A.2d 366, 368 (Pa. Cmwlth. 1988).

The burden of proving a right to unemployment compensation rests with the claimant in voluntary quit cases. *Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366, 369 (Pa. Cmwlth. 1976). "A finding of voluntary

8

termination is essentially precluded unless the claimant has a conscious intention to leave his employment." *Fekos Enters. v. Unemployment Comp. Bd. of Review*, 776 A.2d 1018, 1021 (Pa. Cmwlth. 2001). A claimant voluntarily terminates her employment when she resigns, leaves, or quits her employment without action by the employer. *Roberts v. Unemployment Comp. Bd. of Review*, 432 A.2d 646, 648 (Pa. Cmwlth. 1981). The totality of the circumstances surrounding the incident must be considered in all cases when determining the intent to quit. *Phila. Parent Child Ctr., Inc. v. Unemployment Comp. Bd. of Review*, 403 A.2d 1362, 1363 (Pa. Cmwlth. 1979).

The Board did not err in determining this matter under Section 402(e) of the Law. The threshold issue before the Board was whether Claimant's employment was terminated voluntarily or involuntarily. If Claimant had terminated her employment voluntarily, the next inquiry would have been whether Claimant had cause of a compelling and necessitous nature under Section 402(b) of the Law. The Board, however, relying on the findings of the Referee, properly determined that Claimant did not voluntarily quit her employment. Specifically, the Board relied on the findings that, although Claimant informed Employer of her intent to resign in the future, she had not provided Employer with a specific date at the time Employer severed the employment relationship. To the extent that Claimant may have provided a resignation date, Employer did not take steps to hire a replacement prior to her rescinding the date. Thus, because the Board concluded that Claimant had not voluntarily quit, Claimant had no burden to prove cause of a compelling and necessitous nature. Instead, the relevant inquiry was whether Claimant's termination was due to her own willful misconduct under Section 402(e) of the Law. The burden of proving willful misconduct rested with

9

Employer. The Board determined that Claimant's termination was not due to willful misconduct and, therefore, refused to deny her benefits under Section 402(e) of the Law. The Referee, therefore, did not err in determining Claimant to be eligible for benefits.

Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neshannock Township,                        :
                          Petitioner         :
                                             :
          v.                                 :     No. 2026 C.D. 2016
                                             :
Unemployment Compensation                    :
Board of Review,                             :
                          Respondent         :

# **O R D E R**

AND NOW, this 31st day of July, 2017, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge