# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chan & Associates,           :
               Petitioner           :
                                 :
               v.           :   No. 8 C.D. 2020
                                 :   SUBMITTED: September 17, 2020
Unemployment Compensation Board           :
of Review,           :
              Respondent           :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED: October 19, 2020**

      Employer, Chan & Associates, petitions for review of an order of the Unemployment Compensation Board of Review that reversed the order of a referee. The referee had determined that Claimant, Lori L. High, was ineligible for unemployment compensation benefits because her actions constituted willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm the order of the Board granting benefits.[2]

      The facts as found by the Board are as follows. Claimant worked as a paralegal for Employer, a law firm, from July 2013 to June 2019 at a final hourly rate of $26.92. (Board's Finding of Fact "F.F." No. 1.) Her job duties included scheduling, filing, answering the phone, billing, bookkeeping, and writing checks.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

[2] The Board indicated that it would not be filing a brief, stating that Claimant's brief adequately covered the issues that it would have briefed.

(F.F. No. 3.) Over the years, Employer's caseload grew thereby increasing Claimant's workload. (F.F. No. 4.)

Employer's owner, Wendy Chan, tried to enable Claimant to keep up with the demands of her job. Chan suggested that Claimant stop answering the phones and close her office door to avoid distractions. (*Id*.) However, Claimant answered the phone when no one else did so or she was the only employee in the office. Additionally, when Claimant tried working with her door shut, "other employees would frequently knock to solicit her assistance." (F.F. No. 5.) Chan also directed Claimant "to relinquish some of her duties like billing and check-writing to a new legal assistant and give all divorce cases to the other paralegal." (F.F. No. 6.) However, Claimant "had to train the new legal assistant which limited the duties that she could relinquish." (F.F. No. 7.)

Subsequently, problems ensued once Employer approved Claimant's request to take vacation from July 1 through 5, 2019, with a return date of July 8. (F.F. No. 8.) "There were three court filing deadlines set to occur on or around July 1, 2019 and July 2, 2019." (F.F. No. 9.) As the Board found:

> 10. One of the deadlines involved the filing of an expert report by July 1, 2019.
>
> 11. Per [Chan's] request, [C]laimant contacted the client on June 28, 2019. The client responded that "treatment notes" would be emailed to [C]laimant the next day, at which time [she] would forward them to the other paralegal.
>
> 12. [C]laimant told the other paralegal to be on the look-out for any client reports, and that she would forward the document to her when she received it. However, the client never emailed the report.

13. [E]mployer blamed [C]laimant for not informing the other paralegal about a discovery deadline in the divorce case, and for not placing a deadline on the calendar to exchange exhibits and meet with opposing counsel in a separate custody case.

(F.F. Nos. 10-13.)

After Claimant returned from vacation, Chan met with her to discuss the situation. As a result, Employer discharged Claimant from employment "for the missed filing deadlines that had occurred during her vacation."[3] (F.F. No. 15.) Claimant applied for unemployment compensation benefits and the Erie Unemployment Compensation Service Center found her to be eligible for benefits. Following a hearing at which Claimant, with counsel, and Employer's witnesses, Chan and a paralegal, appeared and testified, the referee reversed the eligibility determination.

On appeal, the Board issued its own findings of fact and decision in favor of Claimant. In support of its determination, the Board cited the totality of the evidence. (Board's Decision at 4.) Employer's petition for review to this Court followed. Employer presents one issue for review: whether the Board erred in determining that Claimant's conduct did not rise to the level of willful misconduct.[4]

Section 402(e) provides, in pertinent part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." 43 P.S. § 802(e). Although not statutorily defined, "willful

---

[3] Employer did not have a handbook or maintain any written disciplinary policy. (F.F. No. 2.)

[4] Whether a claimant's conduct constitutes willful misconduct is a question of law over which this Court exercises plenary review. *Frazier v. Unemployment Comp. Bd. of Review*, 833 A.2d 1181 (Pa. Cmwlth. 2003).

misconduct" has been described as a wanton and willful disregard of an employer's interest, deliberate violation of rules, disregard of standards of behavior which an employer can rightfully expect from its employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interest or the employee's duties and obligations. *Glatfelter Barber Shop v. Unemployment Comp. Bd. of Review*, 957 A.2d 786, 792 (Pa. Cmwlth. 2008). The employer bears the initial burden of proving that a claimant engaged in willful misconduct. *Brown v. Unemployment Comp. Bd. of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). Once the employer establishes a *prima facie* case of willful misconduct, the burden then shifts to the claimant to demonstrate good cause. *Id.*

The Board is the ultimate finder of fact in unemployment compensation cases with the power to determine credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). This Court may not reweigh the evidence or overturn credibility determinations on appeal. *Fitzpatrick v. Unemployment Comp. Bd. of Review*, 616 A.2d 110, 111 (Pa. Cmwlth. 1992). We must view the evidence in the light most favorable to the party who prevailed before the Board, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony. *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). "The fact that Employer may have produced witnesses who gave a different version of the events, or that Employer might view the testimony differently than the Board, is not grounds for reversal . . . ." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Additionally, the Board's findings of fact are conclusive on appeal when the record, in its entirety, contains substantial evidence

4

supporting those findings. *Oliver v. Unemployment Comp. Bd. of Review*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010).

In the present case, Employer argues that Claimant's admitted failure to abide by its suggestions and directives over the course of several months resulted in her missing important filing deadlines and constituted a wanton and willful disregard of its interests, a deliberate violation of its rules, and negligence indicating an intentional disregard of its interests or her duties and obligations. Additionally, it maintains that there is no support in the record for Finding of Fact No. 5—that Claimant tried working with her door closed but found it to be difficult due to coworkers frequently knocking and requesting her assistance, and Finding of Fact No. 7—that training a new legal assistant limited the duties that she could relinquish. In support, Employer notes (1) Claimant's admission that she only closed her door a few times and inability to explain why she did not do so all of the time; and (2) the fact that she spent three weeks training a coworker contrary to its directive to hand over the billing and check writing.

Employer's arguments constitute an improper attack on the Board's determinations as to credibility and evidentiary weight. The Board accepted Claimant's version of the events surrounding her separation, concluding that she made reasonable efforts to improve her work performance and that Employer's directives were not always reasonable under the circumstances. (Board's Decision at 4.)

As Employer asserts with respect to its suggestion that Claimant close her door, Claimant testified that she stopped doing so after a few times. (Sept. 19, 2019 Hearing, Notes of Testimony "N.T." at 27; Reproduced Record "R.R." at 48.) However, in an attempt to illustrate Claimant's failure to follow directions, Chan

5

confirmed Claimant's explanation that people kept stopping in to bother her and that she would have to stop what she was doing and explain something to them. (N.T. at 13; R.R. at 34.) Similarly, the Board concluded that Employer's suggestion that Claimant increase her productivity by not answering the phone was unreasonable, given the fact that she had no alternative when calls went unanswered or she was alone in the office. (Board's Decision at 4.)

Additionally, the Board weighed the fact that Claimant was in the process of training a new coworker. (*Id.*) Notwithstanding Claimant's testimony that Employer instructed her simply to transfer the check writing duties to a coworker, Claimant explained "there were processes and it wasn't just something I could hand to [a coworker]." (N.T. at 25; R.R. at 46.) As for billing, Claimant described what the task entailed and stated that it took her three weeks to transfer those duties.[5] Consequently, even though the failure to follow reasonable directives might constitute willful misconduct,[6] Employer failed to establish that Claimant's reasonable efforts to comply and/or subsequent compliance with its directives constituted willful misconduct under the circumstances of this case.

As for the missed filing deadlines, which Employer testified precipitated Claimant's involuntary discharge and arguably resulted from a failure to follow the aforementioned directives, the Board determined that Employer failed

---

[5] The relevant testimony is as follows:

> I trained [the coworker] on how to do the billing. I helped her with any problems, answered any questions, explained the processes of making sure everyone else had their billing in, how to generate drafts, explained to her that [Employer's owner] needed to review them before they went out and showed her how to send them.

(N.T. at 26; R.R. at 47.)

[6] *LeGare v. Unemployment Comp. Bd. of Review*, 444 A.2d 1151, 1153 (Pa. 1982).

6

to establish that any mistakes were of an *intentional* or *deliberate* nature rising to the level of willful misconduct. In support, the Board accepted as credible Claimant's testimony that she was working sixty to seventy hours per week and to the best of her abilities. (Board's Decision at 4.) Additionally, it noted that Employer instructed her not to work so late. (*Id*.) Notably, a finding of fact that a claimant worked to the best of his or her abilities negates a conclusion of willful misconduct. *Norman Ashton Klinger & Assocs., P.C. v. Unemployment Comp. Bd. of Review*, 561 A.2d 841, 843 (Pa. Cmwlth. 1989).

Additionally, the Board rejected the referee's application of a "heightened level" of care to paralegals that our Supreme Court rejected with respect to healthcare workers in *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 307 (Pa. 2001). Specifically, the Court rejected an *ad hoc* "higher standard of care" for healthcare workers, which ostensibly would have permitted any act of negligence or inadvertence on their part, standing alone, to be deemed willful misconduct, emphasizing that mere negligence does not constitute willful misconduct and that there is only one standard. *Id*. Accordingly, mindful in the present case that Claimant did not testify that she knew the difference between an expert report and treatment notes, the Board reasoned:

> It was noted in the Referee's decision that [C]laimant's conduct in relation to the missed custody report filing was particularly egregious because [she] "should have known the difference" between "treatment notes" and an "expert report" based on her paralegal training. However, given that the standard of behavior against which to measure [her] conduct is not that of a paralegal, but standards common to all, the fact that [she] had paralegal training is irrelevant for purposes of determining whether her mistake rose to the level of willful misconduct . . . .

7

(Board's Decision at 3.)

Moreover, the Board found that Claimant should not be deemed solely culpable for the missed deadline, reasoning:

> [C]laimant also stated that the other paralegal was aware of the report and on the "look-out" for it, as [C]laimant would be forwarding it to her once [Claimant] received it from the client. Thus, when the report was not received by Monday, July 1, 2019, the other paralegal could have reached out to [C]laimant or the client to inquire about the report.

(*Id*.)

Further, the Board addressed the effect of Employer's directive to Claimant to relinquish all of her duties relating to the firm's divorce cases on its inclusion of a missed filing deadline in a divorce proceeding as a reason for termination. The Board concluded: "To state that [C]laimant was instructed to relinquish her divorce case responsibilities, but then use her mistake in a divorce proceeding as a reason to fire her, is inconsistent." *(Id*.) As Employer asserts, Claimant's scheduling duties might have included placing this deadline on the calendar. However, as we reiterate below, the Board determined that Claimant's mistakes were not intentional or deliberate but instead, the result of attempting to keep up with her increased workload.

Finally, mindful of Employer's acknowledgement that Claimant initially was able to keep up with the demands of her job, the Board reasoned:

> Though a claimant who has already demonstrated the skills and abilities to perform the job may be disqualified, here, there is no indication that [C]laimant's work performance deteriorated because of carelessness. [E]mployer testified that over the years, the firm's

8

caseload and, therefore, [C]laimant's work had "tripled, quadrupled" in size. As such, any mistakes or "carelessness" are attributable to [C]laimant's struggle to manage a significantly larger workload.

(*Id.*)

Accordingly, we affirm.[7]

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

_____

[7] In light of Employer's failure to meet its *prima facie* burden of proving willful misconduct, the burden never shifted to Claimant to establish that her conduct was justifiable or reasonable under the circumstances pursuant to *Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631, 634 (Pa. 1976).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chan & Associates,            :
          Petitioner    :
                    :
       v.          :   No. 8 C.D. 2020
                    :
Unemployment Compensation Board   :
of Review,              :
          Respondent  :

# **O R D E R**

AND NOW, this 19th day of October, 2020, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge